Court Of Appeals
Fourth Court of Appeals District of Texas



★ ★ ★ ★ ★ ★

# OPINION

No. 04-08-00479-CV

**MILESTONE POTRANCO DEVELOPMENT, LTD.**,
Appellant

v.

**CITY OF SAN ANTONIO**,
Appellee

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2005-CI-05559
Honorable Janet Littlejohn, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Sandee Bryan Marion, Justice
Phylis J. Speedlin, Justice
Marialyn Barnard, Justice

Delivered and Filed:   May 27, 2009

AFFIRMED

Milestone Potranco Development, Ltd. appeals the trial court's judgment declaring that the City of San Antonio's Tree Preservation Ordinance and Streetscape Tree Planting Standards (the "Tree Ordinance") are enforceable against Milestone's property which is located in the City's extraterritorial jurisdiction ("ETJ"). Milestone asserts that the City's limited authority to enforce its ordinances beyond its corporate limits does not entitle the City to extend the Tree Ordinance to the City's ETJ. We affirm the trial court's judgment.

**STANDARD OF REVIEW**

The question presented by Milestone on appeal is whether sections 212.002 and 212.003 of the Texas Local Government Code ("Code") authorize the City to enforce the Tree Ordinance in the City's ETJ. Statutory construction is a legal question we review de novo. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). In construing statutes, our primary objective is to ascertain the Legislature's intent as expressed by the language of the statute. *State, Texas Parks and Wildlife Dept. v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). "We use definitions prescribed by the Legislature and any technical or particular meaning the words have acquired." *City of Rockwall*, 246 S.W.3d at 625; *see also* Tex. Gov't Code Ann. § 311.011(b) (Vernon 2005). Otherwise, we use the plain language of the statute's words unless a contrary intention or absurd result is apparent from the context. *City of Rockwall*, 246 S.W.3d at 625-26. We presume the Legislature intended a just and reasonable result in enacting a statute. *Id*. at 626; *see also* Tex. Gov't Code Ann. § 311.021(3) (Vernon 2005).

**DISCUSSION**

The City contends it adopted the Tree Ordinance under the authority granted in section 212.002 of the Code, which states:

> After a public hearing on the matter, the governing body of a municipality may adopt ***rules governing plats and subdivisions of land*** within the municipality's jurisdiction to promote the health, safety, morals, or general welfare of the municipality and the safe, orderly, and healthful development of the municipality.

Tex. Loc. Gov't Code Ann. § 212.002 (Vernon 2008) (emphasis added). The City further asserts it has the authority to enforce the Tree Ordinance in the City's ETJ pursuant to section 212.003 of the Code, which states, in pertinent part, as follows:

(a) The governing body of a municipality by ordinance *may extend to the extraterritorial jurisdiction of the municipality the application of municipal ordinances adopted under Section 212.002* and other municipal ordinances relating to access to public roads or the pumping, extraction, and use of groundwater by persons other than retail public utilities, as defined by Section 13.002, Water Code, for the purpose of preventing the use or contact with groundwater that presents an actual or potential threat to human health. *However, unless otherwise authorized by state law, in its extraterritorial jurisdiction a municipality shall not regulate:*

  *(1) the use of any building or property* for business, industrial, residential, or other purposes; . . .

*Id.* at § 212.003 (emphasis added); *see also City of Austin v. Jamail*, 662 S.W.2d 779, 782 (Tex. App.—Austin 1983, writ dism'd) (noting municipality must have specific statutory authority to enforce ordinances in the municipality's ETJ).

Milestone argues the Tree Ordinance cannot be enforced in the City's ETJ because: (1) the Tree Ordinance is not a "rule governing plats and subdivisions of land" and, therefore, cannot be an ordinance adopted under section 212.002 of the Code; (2) the Tree Ordinance is overly broad in its application; or (3) the Tree Ordinance regulates the use of property which the City is prohibited from regulating in the City's ETJ by section 212.003(a)(1) of the Code.

## A.      "Rules Governing Plats and Subdivisions of Land"

We first must determine whether the Tree Ordinance can be characterized as a rule "governing plats and subdivisions of land" that a municipality can adopt under section 212.002 of the Code.

Milestone asserts the Tree Ordinance cannot be so categorized because tree preservation is not one of the purposes for requiring municipal approval of plats and subdivisions. Milestone contends platting and subdivision ordinances are limited to those ordinances that regulate "basic

infrastructure." Based on its belief that the Tree Ordinance is "a purely aesthetic regulatory scheme" that does not regulate "basic infrastructure," Milestone argues that the Tree Ordinance is not a rule "governing plats and subdivisions of land." We disagree.

As previously noted, section 212.002 of the Code authorizes a municipality to adopt certain "rules governing plats and subdivisions of land." TEX. LOC. GOV'T CODE ANN. § 212.002 (Vernon 2008). Section 212.002 describes the "rules governing plats and subdivisions of land" that a municipality is authorized to adopt as rules that "promote the health, safety, morals, or general welfare of the municipality and the safe, orderly, and healthful development of the municipality." *Id.* Moreover, the Texas Supreme Court has noted that the purpose of platting and subdivision regulations is to "ensure that subdivisions are safely constructed and to promote the orderly development of the community." *City of Round Rock v. Smith*, 687 S.W.2d 300, 302 (Tex. 1985). Platting ensures "adequate provisions have been made for streets, alleys, parks and other facilities indispensable to the particular community affected." *Lacy v. Hoff*, 633 S.W.2d 605, 609 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.).

In this case, the Tree Ordinance contains a statement of purpose explaining the objectives or purposes the ordinance is intended to accomplish. SAN ANTONIO, TEX., UNIFIED DEVELOPMENT CODE, § 35.523 (2006). These purposes or objectives include:

> • To preserve trees as an important public resource enhancing the quality of life and the general welfare of the city and enhancing its unique character and physical, historical and aesthetic environment.
>
> • To encourage the preservation of trees for the enjoyment of future generations.
>
> • To encourage the preservation of trees to provide health benefits by the cleansing and cooling of the air and contributing to psychological wellness.

• To encourage the preservation of trees to provide environmental elements by adding value to property, and reduction of energy costs through passive solar design utilizing trees.

• To encourage the preservation of trees to provide environmental elements necessary to reduce the amount of pollutants entering streams and to provide elements crucial to establishment of the local ecosystem.

• To provide tree preservation requirements and incentives to exceed those requirements that encourage the maximum preservation of trees.

• To promote and protect the health, safety and welfare of the public by creating an urban environment that is aesthetically pleasing and that promotes economic development through an enhanced quality of life.

*Id*. We believe the Tree Ordinance is more than simply an aesthetic regulation. Instead, the Tree Ordinance was intended to, and does, regulate tree preservation to promote the health of the municipality and the orderly and healthful development of the community. *See* TEX. LOC. GOV'T CODE ANN. § 212.002 (Vernon 2008); *City of Round Rock*, 687 S.W.2d at 302. Therefore, we conclude that the Tree Ordinance is a rule "governing plats and subdivisions of land" that the City was authorized to adopt under section 212.002 of the Code.

## B.  Overly Broad

In the alternative, Milestone claims that even if the Tree Ordinance is a rule "governing plats and subdivisions of land," the Tree Ordinance is overly broad because it contains provisions unrelated to the activities of platting and subdividing land. Milestone asserts the Tree Ordinance applies not only to those wishing to plat and subdivide property but also to every person who simply wants to reduce the number of trees on his or her property. To support this contention, Milestone quotes language from the Tree Ordinance that states the Tree Ordinance "regulates all activities that result or may result in the removal of protected or heritage trees."

In reviewing the Tree Ordinance, however, we are required to consider the ordinance as a whole and in the context of the entire Unified Development Code. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004). Reviewing the Tree Ordinance under this standard, we conclude the Tree Ordinance does not extend as broadly as Milestone contends.

All of the City of San Antonio's ordinances are codified in the Code of Ordinances. The former Chapter 35 of the Code of Ordinances is now codified separately as the Unified Development Code. The Tree Ordinance is located in Article V, Division 5 of the Unified Development Code. SAN ANTONIO, TEX., UNIFIED DEVELOPMENT CODE, § 35.523 (2006).

The Executive Summary to the Unified Development Code states, "The San Antonio Unified Development Code ("UDC") establishes standards and procedures for new development in the city." SAN ANTONIO, TEX., UNIFIED DEVELOPMENT CODE, vii (2006). The Executive Summary notes that Article III of the UDC relates to zoning regulations and emphasizes, "It is important to note that the zoning restrictions in Article III do not apply to property in the city's extraterritorial jursidiction. . . . [Landowners in the extraterritorial jurisdiction] are, however, subject to the subdivision regulations (Article IV, Division 4) and the requirements of Article V which govern infrastructure improvements, natural resource protection, and parking and storage." *Id*. at vii-viii. Finally, the Executive Summary states, "The standards for land development are consolidated in Development Standards (Article V)." *Id*. at ix. Therefore, the overall structure of the UDC demonstrates that Article IV and V, which are applicable to the City's ETJ, are intended to be limited in their application to the subdivision of land and land development.

In addition, as previously noted, the Tree Ordinance is contained in Article V entitled "Development Standards." SAN ANTONIO, TEX., UNIFIED DEVELOPMENT CODE, Art. V (2006). Section 35-501(a) clarifies that the provisions of Article V apply only to an application for development approval. *Id*. at § 35-501(a). This limited application to development is further reflected in the procedural requirements for submitting an application for development approval which only require developers filing a major or minor plat application to also provide a tree affidavit or tree permit application.[1] SAN ANTONIO, TEX., UNIFIED DEVELOPMENT CODE, app. B, Table B101-1(G)(14) (2006). Therefore, unless an individual is seeking approval for a major or minor plat application, the UDC does not require the individual to provide a tree affidavit or tree permit application.

The Tree Ordinance itself also contains exceptions demonstrating the City's intent that the ordinance's application is limited to subdivisions or similar land development. For example, the Tree Ordinance does not apply to "[t]rees located on property on which construction of single-family, two-family or three-family residential dwelling units has been completed." *Id.* at § 35-523(a)(4)(C). Therefore, the Tree Ordinance does not purport to regulate property on which the construction of a home is complete.

Finally, when the City amended the UDC to include the Tree Ordinance, the caption of the amendment referred to the Tree Ordinance as a "subdivision regulation." SAN ANTONIO, TEX.,

---

[1] The UDC defines a "minor subdivision" as "[a] subdivision involving four (4) or fewer lots fronting on an existing street that does not involve (i) the creation of any new street, alleys or safety lanes; (ii) the extension of off-site utilities; or (iii) the installation of drainage improvements." SAN ANTONIO, TEX., UNIFIED DEVELOPMENT CODE, app. A, § 35-A101, UDC-A:39 (2006). A "major subdivision" is defined as "[a]ny subdivision other than a minor subdivision." *Id*. at UDC-A:37.

ORDINANCE 85262 (Dec. 5, 1996). The memorandum arranging the public hearing on the Tree Ordinance also described the ordinance as a regulation for the preservation of trees in conjunction with commercial and residential development activities. *See* Memorandum from Rebecca Waldman, Acting Director of Planning; Gene Camargo, Director of Building Inspections to Mayor and City Council (Dec. 5, 1996) (setting the date for the statutorily required public hearing to discuss the Tree Ordinance prior to its adoption by the City).

Therefore, after considering the Tree Ordinance as a whole and in the context of the UDC, we conclude the Tree Ordinance was intended to, and does, govern only plats and subdivisions of land. As a result, the Tree Ordinance is not overly broad.

**C. Section 212.003(a)(1) Land Use Exception**

Because the Tree Ordinance was properly adopted pursuant to section 212.002 of the Code, the City may extend the Tree Ordinance to the City's ETJ under section 212.003 of the Code unless one of its exceptions apply. Milestone argues the Tree Ordinance should be treated as a prohibited "land use" regulation under subsection 212.003(a)(1), which contains an exception that prohibits a municipality from regulating, "the use of any building or property for business, industrial, residential, or other purpose." TEX. LOC. GOV'T CODE ANN. § 212.002 (Vernon 2008). We disagree that the Tree Ordinance regulates the use of property as that term is used in section 212.003(a)(1) for several reasons.

First, the language used in section 212.003 of the Code to describe the exceptions to extending ordinances to the ETJ demonstrates that the regulations the Legislature intended to except

are those relating to zoning. Section 211.003 of the Code, which describes the types of zoning regulations a municipality may adopt, lists regulations pertaining to:

(1) the height, number of stories, and size of buildings and other structures;

(2) the percentage of a lot that may be occupied;

(3) the size of yards, courts, and other open spaces;

(4) population density;

(5) the location and use of buildings, other structures, and land for business, residential, or other purposes; and

(6) the pumping, extraction, and use of groundwater....

TEX. LOC. GOV'T CODE ANN. § 211.003 (Vernon 2008). Comparing this language to the list of items a municipality cannot regulate in the ETJ under section 212.003 of the Code readily reveals their similarities as section 212.003 prohibits a municipality from regulating:

(1) the use of any building or property for business, industrial, residential, or other purpose;

(2) the bulk, height, or number of buildings constructed on a particular tract of land;

(3) the size of a building that can be constructed on a particular tract of land, including without limitation any restriction on the ratio of building floor space to the land square footage;

(4) the number of residential units that can be built per acre of land; or

(5) the size, type, or method of construction of a water or wastewater facility....

TEX. LOC. GOV'T CODE ANN. § 212.003(a) (Vernon 2008). The similarities between the zoning ordinances a municipality may adopt under section 211.003 and the list of items a municipality is

prohibited from regulating under section 212.003, therefore, reveals the Legislature's intent to prohibit a municipality from regulating zoning-type uses in the ETJ.

Additionally, the Legislature's intent to exclude only zoning-type regulations from the regulations that a municipality can extend to its ETJ is even more apparent when we consider the prior language used in section 212.003(a). When it was first codified, section 212.003 did not contain any exceptions. Act of April 30, 1987, 70th Leg., R.S., ch. 149, §1, 1987 Tex. Gen. Laws 707, 969. During the 1989 legislative session, however, section 212.003 was first amended by S.B. 220 to provide, "However, a municipality may not impose zoning requirements, including those that regulate the use of any building or property, in any area outside its corporate limits." Act of Feb. 8, 1989, 71st Leg., R.S., ch. 1, § 46, 1989 Tex. Gen. Laws 1, 49. Later that same session, section 212.003, as amended by S.B. 220, was further amended to prohibit a municipality from regulating the first four items listed in the current statute. Act of May 29, 1989, 71st Leg., R.S., ch. 822, § 6, 1989 Tex. Gen. Laws 3770, 3775. From this progression of amendments, therefore, the Legislature acknowledged that the type of regulations it intended to except from extending to the ETJ were zoning regulations but the Legislature also wanted to specify the subject matter of the zoning regulations it intended to except.

Another indication that the uses of property a municipality is prohibited from regulating in section 212.003 are zoning-type uses is the Legislature's amendments to the vested rights statutes. Chapter 245 of the Code recognizes a developer's vested rights and requires a regulatory agency to consider approval or disapproval of an application for a permit, such as a subdivision plat, based on regulations and ordinances in effect at the time the original application is filed. TEX. LOC. GOV'T

CODE ANN. §§ 245.001-245.007 (Vernon 2005). Similar to the extension of ordinances to the ETJ, there also are exceptions to the vested rights statutes that recognize that some regulations are applicable even if adopted or changed after the time the original application is filed. *Id*. at § 245.004. In 2005, the Legislature amended the exceptions to clarify that while zoning regulations are excepted from the vested rights statutes, regulations governing tree preservation are not excepted. *See* Act of April 27, 2005, 79th Leg., R.S., ch. 31, § 1, 2005 Tex. Gen. Laws 40, 41. The bill analysis noted that although the vested rights statutes were created to protect the development rights of landowners from the application of retroactive rulemaking by cities, statutory amendments were needed to curb the "troubling rise in cities' attempts to circumvent the original intent of the statute." Bill Analysis, S.B. 574, 79th Leg., R.S. (2005). Accordingly, section 245.004 was being amended to provide that the exception to vested rights did not apply to tree preservation regulations. *Id*. In adopting this amendment, the Legislature was likening tree preservation ordinances to other land development regulations that govern plats and subdivisions as opposed to zoning ordinances governing the use of property.

Finally, the distinctions made in the case law between zoning or use ordinances and platting or subdivision regulations reveals that the Tree Ordinance does not regulate the "use" of property as that term is used in section 212.003 of the Code. As one court has stated, "Zoning contemplates the prohibition of certain physical uses of land" and "allows a municipality to create districts where land uses are limited or restricted to specific enumerated purposes." *Lacy*, 633 S.W.2d at 609. Planning or platting, on the other hand, "contemplates adequate provision for orderly growth and development." *Id*.; *see also City of Round Rock*, 687 S.W.2d at 302. In this case, the Tree

Ordinance does not regulate the physical use of the land or the specific purpose for which it is used but regulates the manner in which trees must be preserved in developing the land for any use or purpose.

For the foregoing reasons, we conclude that the Tree Ordinance does not regulate the "use" of property as that term is used in section 212.003(a)(1) of the Code. Accordingly, the City was permitted to extend the Tree Ordinance to plats and subdivision development in the City's ETJ.

## CONCLUSION

We conclude the Tree Ordinance was properly adopted by the City under section 212.002 of the Code, and the City was permitted to extend the Tree Ordinance to the City's ETJ pursuant to section 212.003 of the Code. Accordingly, we affirm the trial court's judgment.

Sandee Bryan Marion, Justice