September 20, 2010

The Honorable Eddie Lucio, Jr.
Chair, Committee on International Relations
   and Trade
Texas State Senate
Post Office Box 12068
Austin, Texas 78711

Opinion No. GA-0797

Re: Calculation of impact fees for a platted
subdivision  (RQ-0854-GA)

Dear Senator Lucio:

On behalf of the City of Brownsville's Public Utilities Board, you ask several questions about chapters 245 and 395 of the Local Government Code.[1]

Chapter 245 is commonly referred to as the "vested rights statutes" and grants a project "grandfathered" status. *See* TEX. LOC. GOV'T CODE ANN. §§ 245.001–.007 (West 2005); *Milestone Potranco Dev., Ltd. v. City of San Antonio*, 298 S.W.3d 242, 248 (Tex. App.—San Antonio 2009, pet. denied) (referring to chapter 245 as "the vested rights statutes"); *Save Our Springs Alliance v. City of Austin*, 149 S.W.3d 674, 681 (Tex. App.—Austin 2004, no pet.) (referring to chapter 245 as containing a "grandfather clause" that protects owners from changes in laws that occur during the pendency of a development project). As one court explains, "[c]hapter 245 . . . recognizes a developer's vested rights and requires a regulatory agency to consider approval or disapproval of an application for a permit, such as a subdivision plat, based on regulations and ordinances in effect at the time the original application is filed." *Milestone Potranco Dev., Ltd.*, 298 S.W.3d at 248; *see* Tex. Att'y Gen. Op. No. JC-0425 (2001) at 1 (explaining that chapter 245 works to "lock[] in, for the duration of a real-property 'project,' the development regulations in effect when the original application for the first necessary permit is filed").

Chapter 395 governs the imposition of impact fees by municipalities as well as other governmental entities. *See* TEX. LOC. GOV'T CODE ANN. §§ 395.001–.082 (West 2005 & Supp. 2010). "An impact fee is generally described in one Texas case as a charge 'on new development to pay for new public facilities that become necessary as the result of city growth in a particular area.'" Tex. Att'y Gen. Op. No. GA-0577 (2007) at 2 (citing *DeSoto Wildwood Dev., Inc. v. City of Lewisville*, 184 S.W.3d 814, 820 n.3 (Tex. App.—Fort Worth 2006, no pet.)).

---

[1]Request Letter at 1–2 (*available at* http://www.texasattorneygeneral.gov).

## I.     First Series of Questions

As a preliminary matter, we clarify the context in which you ask your first series of questions. In relation to your first three questions, you ask that we assume "a developer initiates a development plan, pays the impact fees applicable at the time of initiation, and retains ownership of the property, but allows a development plan to lapse due to inactivity under local ordinances and regulations." Request Letter at 1. We understand the initiation of a development plan to mean that the developer in your scenario filed some type of preliminary plan or plat that triggered statutory vesting rights under chapter 245. *See* TEX. LOC. GOV'T CODE ANN. § 245.002(b) (West 2005) ("Preliminary plans and related subdivision plats, site plans, and all other development permits for land covered by the preliminary plans or subdivision plats are considered collectively to be one series of permits for a project."); *City of San Antonio v. En Seguido, Ltd.*, 227 S.W.3d 237, 244 (Tex. App.—San Antonio 2007, no pet.) ("Reading . . . [sub]sections [245.002(a) and (b)] together, the filing of a plan for development or plat application, including preliminary plans and plats, gives rise to vested rights regardless of whether the plan or plat was required to be filed."). We understand your reference to the payment of impact fees to mean statutory impact fees imposed under chapter 395 and, furthermore, we assume that the fees were collected in compliance with chapter 395. *See* TEX. LOC. GOV'T CODE ANN. §§ 395.016, .019 (West 2005) (addressing the collection of impact fees). Finally, we understand the "lapse" of the development plan "due to inactivity under local ordinances and regulations"[2] to mean that the project is dormant under Local Government Code section 245.005.[3] *See id.* § 245.005 (authorizing a regulatory agency to place an expiration date on permits); *see also* Brief from Richard O'Neil, on behalf of the City of Brownsville and the City's Public Utilities Board at 2 (Mar. 26, 2010) (on file with the Opinion Committee) [hereinafter City Brief] (indicating that he too understands your scenario to involve a dormant project).

### A.     Question 1(a)

Having clarified the context, we now consider your first series of questions. You want to know if, in this context, "the developer [is] entitled to a refund of the impact fees if the municipality and the municipal utility have spent the impact fees previously collected to construct regional capital improvements associated with anticipated new growth[.]" Request Letter at 2.

Chapter 395 provides for the refund of impact fees in specific circumstances. *See* TEX. LOC. GOV'T CODE ANN. § 395.025(a), (c) (West 2005) (providing for a refund where a municipality denies service, fails to commence construction within a certain time, fails to make service available

---

[2]Neither chapter 245 nor chapter 395 uses the term "lapse" or "inactive." *See* TEX. LOC. GOV'T CODE ANN. §§ 245.001–.007 (West 2005), *id.* §§ 395.001–.082 (West 2005 & Supp. 2010).

[3]It is not altogether clear to us how the project has become dormant under chapter 245 in light of the fact that impact fees have been paid. *See* TEX. LOC. GOV'T CODE ANN. § 245.005 (West 2005) (authorizing the placement of an expiration date on a permit if no progress has been made towards completion of the project and providing that the payment of impact fees to a regulatory agency constitutes progress towards completion of a project). However, we will assume for purposes of this opinion that the facts articulated in your request are correct. *Cf.* Tex. Att'y Gen. Op. No. GA-0249 (2004) at 2 (assuming the facts provided by the requestor are correct).

within a certain time, or fails to spend fees as authorized by chapter 395 within a certain time). Section 395.025 addresses the refund of an impact fee and provides:

> (a) On the request of an owner of the property on which an impact fee has been paid, the political subdivision shall refund the impact fee if existing facilities are available and service is denied or the political subdivision has, after collecting the fee when service is not available, failed to commence construction within two years or service is not available within a reasonable period considering the type of capital improvement or facility expansion to be constructed, but in no event later than five years from the date of payment under Section 395.019(1).
>
> . . . .
>
> (c) The political subdivision shall refund any impact fee or part of it that is not spent as authorized by this chapter within 10 years after the date of payment.

*Id.*

The municipality must refund the impact fees under chapter 395 only if your scenario fits within section 395.025. *See id.*; TEX. GOV'T CODE ANN. § 311.016(2) (West 2005) (explaining that the term "shall" is construed to impose a duty unless the context or statute provides otherwise). If it does not, we find no other requirement in chapter 395 that a municipality refund impact fees. That a project becomes dormant under Local Government Code section 245.005 is not, standing alone, one of the circumstances that triggers a refund under section 395.025. Ultimately, however, you do not provide sufficient information to determine if the situation you describe fits within the refund provisions of section 395.025.[4]

## B.   Question 1(b)

You next inquire whether "the developer who later attempts to reinstate the development plan after the municipality adopts additional or increased impact fees [is] entitled to grandfathered status or a vested right to be subject to the originally assessed impact fees[.]" Request Letter at 2. We understand the terms "grandfathered" or "vested" to refer to rights acquired under chapter 245.

---

[4]We note that, in any particular circumstance, factors other than chapter 395's refund provisions may be important in answering this question, such as the terms of any agreement between the developer and municipality and relevant ordinances and regulations adopted by the municipality. *Cf., e.g., McNair v. City of Cedar Park*, 993 F.2d 1217, 1219 (5th Cir. 1993) (noting that the municipality's ordinance made no mention of refunds and rejecting developer's claims that municipality was unjustly enriched when it failed to return impact fees after the developer abandoned the development because of bad economic conditions and business disputes); *DeSoto Wildwood Dev., Inc.*, 184 S.W.3d at 824–25 (involving a developer's breach of contract claims against a municipality regarding the use of impact fees).

*Milestone Potranco Dev., Ltd.*, 298 S.W.3d at 248 (referring to chapter 245 as "the vested rights statutes"); *Save Our Springs Alliance*, 149 S.W.3d at 681 (referring to chapter 245 as containing a "grandfather clause" that protects owners from changes in laws that occur during the pendency of a development project).

Even assuming chapter 245 applies to impact fees,[5] your scenario involves a dormant project for which the permit has expired under section 245.005.[6] *See* Request Letter at 1 (asking that we assume the development plan has lapsed due to inactivity). Thus, so long as the facts are as you describe and there is no contractual or extra-statutory basis for preserving the original application, the developer has no grandfathered status or vested rights in the project under chapter 245. *See* Tex. Att'y Gen. Op. No. JC-0425 (2001) at 3 (explaining that a "project would be subject to current development regulations" if the permit has expired and the project is dormant under section 245.005). Because we answer question 1(b) in the negative, we do not address question 1(c).

## II.    Second Series of Questions

In your second series of questions, you ask us to assume "a platted subdivision is assessed impact fees under Section 395.016(d), Local Government Code, but no impact fees are actually collected because of subdivision inactivity (for example, no requests for building permits or utility connections), and the municipality adopts additional or increased impact fees during the inactivity period." Request Letter at 2; *see also* TEX. LOC. GOV'T CODE ANN. § 395.016(d) (West 2005) (providing that a municipality may assess impact fees before or at the time of recordation of a subdivision plat and collect the fees when a building permit is issued or an application for an individual water meter connection is filed).

### A.    Question 2(a)

You ask whether "a distinction [should] be made between an 'assessment' or determination of impact fees and an actual collection of impact fees under [subsections] 395.016(d) and (f), Local Government Code." Request Letter at 2. Subsection (d) provides that a municipality may *assess* impact fees before or at the time of recordation of a subdivision plat, but may *collect* the fees when a building permit is issued or an application for an individual water meter connection is filed. TEX. LOC. GOV'T CODE ANN. § 395.016(d) (West 2005). Subsection (f) defines the term "assessment" to mean "a determination of the amount of the impact fee in effect on the date or occurrence provided in this section and is the maximum amount that can be charged per service unit of such development." *Id.* § 395.016(f). In a prior opinion, this office concluded that the collection of an

---

[5]It is not clear and we find no court that has addressed whether chapter 245 applies to impact fees. *See* TEX. LOC. GOV'T CODE ANN. §§ 245.004(6) (West 2005) (explaining that chapter 245 "does not apply to . . . fees imposed in conjunction with development permits"); 395.001(4) (defining "impact fee" as a fee imposed against new development); 395.016(e) ("The political subdivision may assess the impact fees at any time during the development and building process . . . .").

[6]Section 245.005 is entitled "Dormant Projects" and authorizes a regulatory agency to place an expiration date on a permit. *Id.* § 245.005(a)–(b). Here, we understand that the preliminary plan or plat that triggered statutory vesting rights under chapter 245 has now expired leaving the project dormant. *See* discussion *supra* p. 2.

impact fee refers to the time the governmental entity receives payment of the fees. Tex. Att'y Gen. Op. No. GA-0577 (2007) at 2. In sum, the express language of the statute reflects, and a prior opinion of this office recognizes, a distinction between the assessment of an impact fee and the collection of an impact fee under subsections 395.016(d) and (f).

### B.    Question 2(b)

You next ask whether "the enactment of an impact fee ordinance by a municipality constitute[s] an 'assessment' of an impact fee without any other specific act by the municipality[.]" Request Letter at 2.

Considered as a whole, chapter 395 contemplates that the act of adopting an impact fee and the act of assessing an impact fee are separate activities. *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) (stating that in determining legislative intent, a court "must always consider the statute as a whole rather than its isolated provisions"). First, the act of assessing an impact fee appears to relate to a specific new development whereas the act of adopting an impact fee generally relates to a larger area. As previously set out, section 395.016(f) defines the term assessment to mean "a determination of the amount of the impact fee in effect on the date or occurrence provided in this section and is the maximum amount that can be charged per service unit of *such development*." TEX. LOC. GOV'T CODE ANN. § 395.016(f) (West 2005) (emphasis added); *see also id.* § 395.001(10) (defining the term "service unit"). This indicates that the assessment of an impact fee is a calculation related to a specific new development. Similarly, section 395.016(d), upon which your scenario is based, indicates that an assessment is made against a particular subdivision plat. *Id.* § 395.016(d) ("The political subdivision shall assess the impact fees before or at the time of recordation of a subdivision plat or other plat under Subchapter A, Chapter 212 . . . . "); *see also* Request Letter at 2 (asking that we assume "a platted subdivision is assessed impact fees under Section 395.016(d), Local Government Code"). In contrast, the act of adopting an impact fee is generally applicable to an area broader in scope than one particular development. For instance, the adoption of an impact fee is preceded by and based upon the adoption of land use assumptions and a capital improvement plan. TEX. LOC. GOV'T CODE ANN. § 395.045 (West 2005). The land use assumptions include a description of a service area. *Id.* § 395.001(5). The service area is the entire area "to be served by the capital improvements or facilities expansions specified in the capital improvement plan." *Id.* § 395.001(9).

Second, chapter 395 requires an entity to take specific action when adopting an impact fee but not when assessing an impact fee. The act of adopting an impact fee must be reflected in an ordinance, order, or resolution, whereas, section 395.016(f) provides that, in regard to an assessment, "[n]o specific act by the political subdivision is required." *Id.* §§ 395.051, .016(f).

Third, chapter 395 does not use the term "assessment" when referring to the adoption of an impact fee. *See Laidlaw Waste Sys. (Dallas), Inc., v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995) ("[E]very word of a statute must be presumed to have been used for a purpose."). Section 395.051, for instance, provides that "[t]he political subdivision, within 30 days after the date of the public hearing on the *imposition* of an impact fee, shall approve or disapprove the *imposition* of an impact fee" and prohibits the "ordinance, order, or resolution approving the *imposition* of an impact

fee" from being "adopted as an emergency measure." TEX. LOC. GOV'T CODE ANN. § 395.051 (West 2005) (emphasis added). Section 395.024 provides that "[t]he order, ordinance, or resolution *levying* an impact fee must provide that all funds collected through the adoption of an impact fee shall be deposited in interest-bearing accounts." *Id.* § 395.024(a) (emphasis added). The act of assessing an impact fee is, in contrast, referred to in a limited number of provisions of chapter 395—sections 395.016 and 395.017—and is not referred to in provisions related to the act of adopting an impact fee. *See id.* §§ 395.016–.017. In sum, we conclude that the acts of adopting an impact fee and assessing an impact fee are distinct activities.

However, we find nothing in chapter 395 that would prohibit a single ordinance from serving as both the means by which a municipality imposes and assesses an impact fee. Whether any particular ordinance both imposes and assesses an impact fee is an issue this office cannot resolve. *See* Tex. Att'y Gen. Op. No. GA-0648 (2008) at 6 (explaining that this office generally does not construe city ordinances and cannot answer questions that require the resolution of fact questions).

## C.  Question 2(c)

Finally, you ask whether the developer[7] in your scenario pays "the originally assessed impact fees or the additional or increased impact fees" "when subdivision activity begins, assuming that no increased subdivision use density requires any consumption of additional utility service units." Request Letter at 2. Section 395.017 expressly provides that "*[a]fter assessment of the impact fees* attributable to the new development or execution of an agreement for payment of impact fees, *additional impact fees or increases in fees may not be assessed* against the tract for any reason unless the number of service units to be developed on the tract increases." TEX. LOC. GOV'T CODE ANN. § 395.017 (West 2005) (emphasis added). Under the express language of the statute, no additional impact fees or increases may be assessed against a tract after the original assessment and thus, the developer in your scenario would pay the originally assessed impact fees.[8] *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009) (explaining that, when construing a statute, the "primary objective is to give effect to the Legislature's intent as expressed in the statute's language").

---

[7]One brief received by our office contends that it is the builder not the developer who pays impact fees. *See* Brief from Ned Muñoz, Vice President of Regulatory Affairs and General Counsel, Texas Association of Builders at 6 (Mar. 3, 2010) (on file with the Opinion Committee). However, we will assume for purposes of this opinion that the facts articulated in your request are correct and that the developer in your scenario is responsible for paying the impact fees. *Cf.* Tex. Att'y Gen. Op. No. GA-0249 (2004) at 2 (assuming the facts provided by the requestor are correct).

[8]We recognize that section 395.017 is arguably inconsistent with other provisions in chapter 395. *See* TEX. LOC. GOV'T CODE ANN. §§ 395.055–.057 (West 2005); City Brief at 9 ("A plain reading of LGC Section 395.017 seems contrary to the overall intent of LGC Chapter 395 for cities to keep impact fees reflective of current utility infrastructure costs.").

## S U M M A R Y

Local Government Code chapter 245 recognizes a developer's vested rights and requires a regulatory agency to consider approval or disapproval of an application for a permit based on regulations and ordinances in effect at the time an original application is filed. A developer has no vested rights in a project under chapter 245 if the project is dormant under section 245.005.

Local Government Code chapter 395 governs the imposition of impact fees by municipalities. Impact fees are, as a general matter, charges on new development to pay for public facilities that become necessary as the result of growth in a particular area. A municipality must refund impact fees as provided in section 395.025. There is, as reflected in the express language of chapter 395 and in prior attorney general opinions, a distinction between the *assessment* of an impact fee and the *collection* of an impact fee. Chapter 395 indicates that the act of adopting an impact fee and the act of assessing an impact fee are distinct activities. However, we cannot say as a matter of law that a single ordinance could not serve as both the means by which a municipality imposes and assesses an impact fee. By its express terms, section 395.017 prohibits the imposition of additional or increased impact fees against a tract after the fees have been assessed unless the number of service units to be developed on the tract increases.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID J. SCHENCK
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Christy Drake-Adams
Assistant Attorney General, Opinion Committee