COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


| | | |
|---|---|---|
| ALICIA WILSON KUYKENDALL, | § | |
| Appellant, | § | |
| | | No. 08-10-00208-CV |
| v. | § | |
| | | Appeal from the |
| | § | |
| CITY OF SAN ANTONIO, | | 150th Judicial District Court |
| INDIVDUALLY AND ON BEHALF OF | § | |
| THE CITY OF SAN ANTONIO | | of Bexar County, Texas |
| DANGEROUS STRUCTURE | § | |
| DETERMINATION BOARD, | | (TC# 2009C118878) |
| | § | |
| Appellees. | | |
| | § | |


**O P I N I O N**

Ms. Alicia Kuykendall appeals the district court's judgment affirming the San Antonio

Dangerous Structure Determination Board's decision ordering two buildings to be demolished.

She raises three issues for this Court's review. Issues One and Three challenge the notice

procedures related to the condemnation proceedings on due process grounds. In Issue Two,

Ms. Kuykendall asserts that the demolition order entered by the administrative body below is

erroneous because she was not provided proper notice of the proceedings. Finding no reversible

error, we affirm.


**BACKGROUND**

Alicia Kuykendall owns two buildings known as 307 and 309 Cactus Street in San

Antonio Texas. She resides in Austin, Texas. In April of 2009, the City of San Antonio received

a complaint that there were problems with 307 and 309 Cactus Street, and sent an investigator to inspect and record the condition of the buildings. Finding the buildings badly deteriorated, the investigator recommended the properties to the San Antonio Dangerous Structure Determination Board ("DSDB"). On October 12, 2009, the DSDB held a public hearing to determine whether the buildings should be demolished. With evidence provided by the city's investigator in hand, the DSDB determined the buildings constituted public nuisances and ordered that they be demolished.

Ms. Kuykendall appealed the DSDB's decision by filing a verified petition in the 150th Judicial District Court in Bexar County on November 20, 2009. In her amended verified petition, Ms. Kuykendall alleged that the demolition order was subject to reversal on the basis that DSDB failed to notify her of the hearing violating her right to due process of law. She argued that she was not provided pre-hearing notice, was unable to attend the hearing, and did not become aware of the board's decision until approximately two weeks after the hearing.

According to the original petition, the DSDB sent notice of the hearing to Ms. Kuykendall's residential address by first class, certified mail, return receipt requested, on October 2, 2009, approximately ten days prior to the hearing. When the postal service attempted delivery on October 3, 2009, Ms. Kuykendall was not at her residence to receive the delivery. According to the original petition, the postal service made another unsuccessful delivery attempt on October 22, 2009. There is no explanation in the record for the delay between the first and second delivery attempts. The pre-hearing notices were deposited in Ms. Kuykendall's mail box, without her signature of receipt on October 28, 2009.

On October 21, 2009, after the hearing, the DSDB sent documentation of the board's decision, as well as the demolition orders, by first class, certified mail, return receipt requested to

Ms. Kuykendall's residential address. On October 22, 2009, Ms. Kuykendall visited the Cactus Street properties in person and discovered that the board had posted notice of the hearing on the premises at 309 Cactus. When she returned home, Ms. Kuykendall received a letter, sent certified mail, return receipt requested, notifying her of the demolition orders. The sequence of events was summarized in the amended petition as follows:

October 2, 2009 - Public Hearing set for October 12, 2009 and Pre-Hearing Notice Mailed;

October 12, 2009 - Public Hearing Held Without [Ms. Kuykendall's ] Presence;

October 22, 2009 - Demolition Orders Issued and Mailed;

October 23, 2009 - [Ms. Kuykendall] Receives and Signs for Demolition Orders; and

October 28, 2009 - [Ms. Kuykendall] Receives the Pre-Hearing Notice.

In its response to the petition, the City noted that Ms. Kuykendall's arguments were not directed toward the substantive contents of the notice, but to the timeliness of its receipt. According to the response, in addition to the chain of events contained in Ms. Kuykendall's pleadings, the City also attempted to notify the property owner by: filing notice in the Bexar County Clerk property records; publishing the notice in a newspaper of general circulation in San Antonio; and posting notice of the hearing in San Antonio's City Hall, as well as on the City's website.

On April 13, 2010, the district court heard additional argument. By written order entered June 11, 2010, the district court affirmed the DSDB's decision, but stayed enforcement of the order for fourteen days to permit Ms. Kuykendall time to perfect her appeal. Ms. Kuykendall filed a motion for new trial on June 23, 2010. For the first time, Ms. Kuykendall challenged the composition of the DSDB as a violation of her due process rights. According to the motion, by requiring that the board be comprised of city employees, the statute creating the body violated

the due process clause of the federal constitution and created a conflict of interest. The trial court denied the motion by written order on June 25, 2010. This appeal follows.

**ANALYSIS**

We begin with a brief overview of the law related to an appeal from an administrative agency. Chapter 54 of the Texas Local Government Code provides municipalities with the general authority to enforce rules, ordinances, and police regulations enacted by their governing bodies. *See* TEX.LOC.GOV'T CODE ANN. § 54.001(a)(West 2008). In addition, Chapter 214 of the Code provides municipalities with specific authority to pass substantive ordinances regulating the identification, repair, and demolition of substandard buildings. *See* TEX.LOC.GOV'T CODE ANN. § 214.001(a)(West Supp. 2011). Chapter 214 contains minimal procedural standards for administrative proceedings related to the enforcement of those standards, as well as the procedures for judicial review. *See* TEX.LOC.GOV'T CODE ANN. §§ 214.001, 214.0012 (West 2008). In short, Chapter 54 provides the framework for notice and hearing for municipal ordinance violations, while Chapter 214, in relevant part, outlines the procedures following an administrative determination that a building is substandard. *See* TEX.LOC.GOV'T CODE ANN. §§ 54.001, 54.035; TEX.LOC.GOV'T CODE ANN. § 214.001 et seq.

The City of San Antonio has enacted ordinances pursuant to its authority under Chapters 54 and 214, in Chapter Six, Article VIII of its Code of Ordinances. SAN ANTONIO, TEX., REV. ORDINANCES ch. 6, art. VIII, §§ 6-158, 159, and 163(2008). The DSDB, created by Section 6-158, is vested with the City's authority under Texas Government Code Section 214.001. *See* SAN ANTONIO, TEX., REV. ORDINANCES ch. 6, art. VIII, § 6-158. A property owner may appeal a DSDB decision on the basis that the board's decision was illegal by filing a verified petition in the district court. SAN ANTONIO, TEX., REV. ORDINANCES ch. 6, art. VIII, § 6-173(a) (1997).

The appeal is by writ of certiorari, and is limited to a hearing under the substantial evidence rule. TEX.LOC.GOV'T CODE ANN. § 214.0012; SAN ANTONIO, TEX., REV. ORDINANCES ch. 6, art. VIII, § 6-173(c).

In a pure substantial evidence review, the administrative action is presumed to be valid and supported by substantial evidence. *See Perkins v. City of San Antonio*, 293 S.W.3d 650, 654 (Tex.App.--San Antonio 2009, no pet.); *Nussbaum v. City of Dallas*, 948 S.W.2d 305, 308 (Tex.App.--Dallas 1996, no writ). In the district court, it is the petitioner's burden to demonstrate the illegality of the administrative decision. *Office of Pub. Utility Counsel v. Pub. Utility Comm'n of Tex.*, 895 S.W.2d 712, 714 (Tex.App.--Austin 1993), *rev. on other grounds by*, 878 S.W.2d 598 (Tex. 1994). Similarly, on appeal from the district court, it is the appellant's burden to show error. *Id.* at 714. This burden includes presenting a complete record, including the record produced during the administrative proceedings. *Id.* Absent such a record, the reviewing court must presume that the agency's order was valid and supported by substantial evidence. *See Nussbaum*, 948 S.W.2d at 308.

As stated above, Ms. Kuykendall's appeal does not include a challenge that the evidence before the board was insufficient to support its decision. Indeed, the appellate record in this case does not include the record produced in the administrative hearing.[1] Therefore, a substantial

---

[1] During oral argument Appellant's counsel indicated that the DSDB record had been filed, pursuant to an order granting a motion to supplement entered by this Court. We are unaware of any such motion or order. According to our records (including information forwarded from the Fourth Court of Appeals):

   (1) By letter dated April 18, 2011, Appellant's counsel sent a digital copy of the DSDB record in the form of a compact disc (CD). Counsel requested that the digital copy, "be filed in the 8th Court of Appeals."

   (2) This Court responded to counsel's request by letter dated April 21, 2011, returning the CD, and instructing counsel to make arrangements "with the District Clerk or Court Reporter to have it prepared in a supplemental record and filed with this Court." We received no response.

   (3) On May 5, 2011, this Court received and filed the City of San Antonio's objection to Appellant's "LATE ATTEMPT TO SUPPLEMENT THE RECORD."

evidence review of the merits of the administrative decision in this case could have but one result; the DSDB's decision and district court's order would be affirmed as Ms. Kuykendall cannot demonstrate the decision was unsupported. *See Nussbaum*, 948 S.W.2d at 308. Instead, Ms. Kuykendall argues that the composition of the DSDB violates her due process right to have her case decided by an impartial fact finder. She contends that the DSDB did not comply with the notice requirements under San Antonio's ordinances, or as required by state law. Finally, she argues that the DSDB's notice requirement violates notions of due process under the state and federal constitutions.

As noted by the City in its brief, the argument Ms. Kuykendall presents in Issue One has already been addressed by the Court of Appeals for the Fourth District of Texas, in San Antonio.[2] *See Slavin v. City of San Antonio*, 330 S.W.3d 670 (Tex.App.--San Antonio 2010, no pet.). In *Slavin*, our sister court was asked whether an administrative decision was a *per se* violation of a property owner's due process rights because the body was comprised of city employees, rather than "impartial citizens." *See Slavin*, 330 S.W.3d at 672. As is the case before us in this instance, the record in *Slavin*, did not indicate that such an argument was made to the administrative body, and as in this case, there was no indication that the body acted in an arbitrary manner. *Id.* at 672-73. We see no reason to depart from the San Antonio Court of Appeals' prior determination of this argument based on the record before us, and Ms.

---

(4) Appellant responded to the City's objection, in writing, filed in this Court on May 27, 2011. According to the response, Appellant's counsel did not recognize the need for a supplemental record until the City noted the omission in its appellee's brief.

As of the date of submission, there is no record that Appellant filed a motion to supplement the appellate record. Additionally, there has been no response to this Court's April 21, 2011 letter instructing Appellant's counsel to make arrangements to supplement the record and there is no record of an order granting or denying a request to supplement. No record of the DSDB proceedings has been filed in this Court.

[2] This case was transferred from the Fourth Court of Appeals to this Court pursuant to a docket equalization order entered by the Texas Supreme Court. *See* TEX.GOV'T CODE ANN. § 73.001 (West 2005). We have applied precedent of the Fourth Court of Appeals. *See* TEX.R.APP.P. 41.3.

Kuykendall has made no attempt to distinguish the facts or analysis presented in *Slavin* from the instant case. Issue One is overruled. *See* TEX.R.APP.P. 41.3.

In Issue Two, Ms. Kuykendall contends that the DSDB's decision was invalid because the board failed to comply with state and local notice requirements. Her argument does not challenge the contents of the notices sent to her residence, rather it focuses on the timeliness of their receipt. As the San Antonio Court of Appeals noted in *Perkins*, although the district court's review of the administrative decision is confined to a substantial evidence review, the court is not prohibited from considering whether the proceedings before the administrative body complied with concepts of due process, including notice. *See Perkins*, 293 S.W.3d at 654 n.2. By affirming the demolition order in this case, the district court implicitly concluded that Ms. Kuykendall had been notified of the proceedings in accordance with the law, and was not denied due process. Given the absence of a record of the DSDB proceedings in this case, Ms. Kuykendall's argument can only be considered in light of the competing verified petitions filed in the district court and the applicable statutory provisions in the Texas Labor Code, and San Antonio's Code of Ordinances. We turn first to the state statutes.

Local Government Code Section 54.035 requires that notice of proceedings for the enforcement of municipal ordinances must be given:

> (1) by personal delivery, by certified mail with return receipt requested, or by delivery by the United States Postal Service using signature confirmation service, to the record owners of the affected property . . . and;
>
> (2) to all unknown owners, by posting a copy of the notice on the front door of each improvement situated on the affected property or as close to the front door as practicable.

TEX.LOC.GOV'T CODE ANN. § 54.035(a)(West Supp. 2011).

The notice must be posted "and either personally delivered or mailed on or before the

10th day before the date of the hearing . . . ." Tex.Loc.Gov't Code Ann. § 54.035(b). The statute further provides that a municipality "may" file notice of the proceedings in the property records in the county in which the property is located, Tex.Loc.Gov't Code Ann. § 54.035(c), and states that when the municipality "mails a notice in accordance with this section . . . the validity of the notice is not affected, and the notice is considered delivered." Tex.Loc.Gov't Code Ann. § 54.035(f).

There is no dispute that the DSDB used the mail to send, by certified mail, return receipt requested, notice that a hearing was scheduled on October 2, 2009, to Ms. Kuykendall. Ms. Kuykendall does not allege that the notice was mailed less than ten days prior to the hearing. She also concedes that the post office attempted to deliver the notice to her residential address on October 3, 2009. Her argument is limited to the fact that because she did not receive the notice until October 22, 2009, it was ineffective and in violation of the statutory requirements. We are not persuaded by this argument. There is nothing in the language of the relevant sections of the Local Government Code to indicate that receipt by the property owner is required, and we are unaware of Texas case law that has imposed such a requirement.[3] As such, there is no basis in this record to overrule the district court's conclusion that the DSDB's notice complied with state law, and Issue Two is overruled as to that argument.

We are left to consider the applicable sections of San Antonio's Code of Ordinances. At the center of Ms. Kuykendall's argument is her interpretation of Section 6-162, titled, "Notice of Hearing." San Antonio, Tex., Rev. Ordinances ch. 6, art. VIII, § 6-162 (1997). According to sub-paragraph (a), the code compliance officer is responsible for locating the property owner and preparing the pre-hearing notice. San Antonio, Tex., Rev. Ordinances ch. 6, art. VIII, § 6-

---

[3] Indeed, Section 54.035(f) indicates that the validity of the notice is not affected and considered delivered if the notice is not claimed. Tex.Loc.Gov't Code Ann. §54.035(f).

162(a). The notice must inform the property owner that hearing before the DSDB has been scheduled, and note the date and time of that hearing. SAN ANTONIO, TEX., REV. ORDINANCES ch. 6, art. VIII, § 6-166(a)(2002). The subsection concludes by specifying that the date of the hearing cannot be less than five, or more than sixty days, after "receipt" of the notice. *See* SAN ANTONIO, TEX., REV. ORDINANCES ch. 6, art. VIII, § 6-166(a).

According to Ms. Kuykendall, because the hearing was held on October 12, and she did not receive notice of the hearing until October 22, the City's notice failed to meet the five-to-sixty day requirement. In response, the DSDB argues that in cases where notice is sent via the United States Postal Service, rather than by personal delivery "receipt" under Section 6-166(a), refers to the date the notice is posted, not the date it is delivered. In essence, this is a question of statutory construction, subject to *de novo* review. *See Milestone Potranco Dev., Ltd. v. City of San Antonio*, 298 S.W.3d 242, 243 (Tex.App.--San Antonio 2009, pet. denied). When construing a statute, our primary goal is to determine, and give effect to the enacting body's intent. *Id.* To do so we use the plain meaning of the statute's language, unless to do so would cause an absurdity, because a contrary intention is apparent from the context. *Id.* In this instance, the exception controls.

It is reasonable to interpret Section 6-166(a) as contemplating the following chain of events: (1) the DSDB designates a certain date and time to conduct a hearing regarding a certain property; (2) the code compliance officer prepares a notice for the property owner stating that a hearing has been scheduled, and noting the date and time; and (3) the notice is transmitted, by mail, personal delivery, or posting to the property owner. *See* SAN ANTONIO, TEX., REV. ORDINANCES ch. 6, art. VIII, § 6-162(b); SAN ANTONIO, TEX., REV. ORDINANCES ch. 6, art. VIII, § 6-166(a). It is reasonable, therefore, to conclude that the five-to-sixty day limit refers to the

date of transmission, rather than the date the notice is actually delivered to, or received by the property owner. Were we to conclude otherwise the board would be unable to schedule hearings, and the compliance officer would be unable to include the required information in the notice because the five-to-sixty days could not be ascertained until after the owner received the notice. Because Ms. Kuykendall's interpretation frustrates the purpose of the provision, and leads to an absurd result, we disagree with her argument. The notice was transmitted in accordance with the ordinance, and the trial court's implicit finding was not in error. Accordingly, we overrule the remainder of Issue Two.

In Issue Three, Ms. Kuykendall raises a global challenge under the state and federal constitutions, arguing that the "notice statute" contained in Chapter 214 of the Local Government Code violates her right to due process. As a preliminary matter, we note that Ms. Kuykendall's argument in support of Issue Three is limited to approximately one double spaced page of her appellate brief. The argument contains three citations; first, a general citation to the United States Supreme Court's decision in *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), followed by a citation to the service of process standard in Texas Rule of Civil Procedure 106, and finally a statement that "Chapter 214, Tex. Loc. Gov. Code contemplates lack of notice . . . as notice." The brief then concludes that state law, "essentially turns due process on its head." The Texas Rules of Appellate Procedure require an appellant's brief to contain, "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX.R.APP.P. 38.1(i). While we question whether Ms. Kuykendall's discussion of Issue Three satisfies this standard, we will nonetheless briefly address the issue in the interests of justice.

As discussed in our analysis of Issue Two, Ms. Kuykendall's argument against the

DSDB's decision was based on her assertion that she did not receive notice of the hearing. In our overview of the applicable statutes, we noted that Chapter 54 of the Local Government Code prescribes the manner in which a municipality shall notify an individual that they are in violation of an ordinance. *See* TEX.LOC.GOV'T CODE ANN. § 54.035 et. seq. Because Chapter 214 does not apply in a manner that would have affected Ms. Kuykendall's receipt of the pre-hearing notice, there is no basis for a due process violation. Accordingly, Issue Three is overruled.

### CONCLUSION

Having overruled all of Appellant's issues, we affirm the district court's judgment.

February 1, 2012

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.