

In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00083-CV

_____

SOUTHERN DEVELOPMENT OF MISSISSIPPI, INC., Appellant

V.

ZONING BOARD OF ADJUSTMENT OF THE
CITY OF MARSHALL, TEXAS, AND THE CITY OF
MARSHALL, TEXAS, Appellees

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 11-0088

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

This is a zoning dispute between Southern Development of Mississippi, Inc. (SDM), and the City of Marshall, Texas. SDM owns a lot located at 1006 West Grand Avenue in Marshall. This lot has been platted as Outlot 54. The northern boundary of the lot abuts West Grand Avenue, and the southern boundary of the lot abuts West Burleson Street. The northern part of the lot is zoned "C-2" for retail business, and the southern part of the lot is zoned "R-1" for single-family detached residential. After construction had begun, the City determined the planned structure[1] was being constructed too close to the residential portion of the lot and issued a stop construction order. SDM appealed the City's decision to the Zoning Board of Adjustment of the City of Marshall, Texas. The Zoning Board affirmed the City's decision. SDM filed an application for a writ of certiorari in the district court. The district court affirmed the Board's decision, and SDM has now appealed to this Court.

SDM's sole issue on appeal is that the Board's decision is illegal and a clear abuse of discretion. The Board has filed a cross-issue arguing the district court lacked jurisdiction because SDM's application was not properly verified.

---

[1]SDM purchased the property in 2009 from United Way under the assumption it was zoned commercial. At the hearing, Mark Priestner, an employee of Planning Concepts, acting on behalf of SDM, testified that when SDM determined the lot was partially zoned commercial and partially zoned residential, SDM attempted to have the property rezoned. SDM encountered opposition from neighboring landowners and did not succeed in rezoning the property. According to SDM's plan, a 6,000 square foot retail building will be constructed with a one-foot setback from the part of the lot zoned as residential.

2

## I.     The Board Waived any Defect in the Verification

Because the Board's counter-issue is alleged to be jurisdictional, we will address it first. The Board argues the district court's jurisdiction, pursuant to TEX. LOCAL GOV'T CODE ANN. § 211.011(a) (West 2008), is not invoked unless a verified petition for writ of certiorari is filed. SDM's verification of its petition for writ of certiorari provides:

> I, **Southern Development of Mississippi, Inc**., Plaintiff in the above referenced lawsuit, state on oath that I have read the ***Plaintiff's Original Petition, Request for Writ of Certiorari, and Request for Declaratory Judgment*** and that the statements and facts contained therein are true and correct to the best of my knowledge and belief.   Exhibits A-E are true and correct copies of correspondence to and/or from agents of Southern Development of Mississippi, Inc.

The Board argues this verification is insufficient because it contains the phrase "to the best of my knowledge and belief."[2]   Because the verification was inadequate, the Board argues that SDM failed to invoke the jurisdiction of the district court and that the Board can raise this issue for the first time on appeal.[3]   SDM responds the verification was not defective,[4] defects in verifications are not jurisdictional, and any defect was waived by not objecting in the trial court.

---

[2]It is well established under Texas caselaw that an affidavit, based on the affiant's "best knowledge and belief," is no evidence of the facts asserted.   *In re Estate of Wilson*, 252 S.W.3d 708, 713–14 (Tex. App.—Texarkana 2008, no pet.); *Teixeira v. Hall*, 107 S.W.3d 805, 809 (Tex. App.—Texarkana 2003, no pet.); *see, e.g., Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (per curiam); *Humphreys v. Caldwell*, 888 S.W.2d 469, 470 (Tex. 1994) (per curiam); *Burke v. Satterfield*, 525 S.W.2d 950, 955 (Tex. 1975).

[3]"Subject-matter jurisdiction cannot be waived, and can be raised at any time."   *Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008) (per curiam).

[4]SDM argues the verification is not defective because the second sentence does not contain the phrase "best knowledge and belief."   SDM alternatively argues, citing *Schultz v. Houston*, 551 S.W.2d 494, 496 (Tex. Civ. App.—Houston [14th Dist.] 1977, no writ), that an exception applies because whether an act is illegal requires conjecture and speculation.   It is not necessary for us to address these arguments.

3

"As a quasi-judicial body, the decisions of a zoning board are subject to appeal before a state district court upon application for a writ of certiorari." *City of Dallas v. Vanesko*, 189 S.W.3d 769, 771 (Tex. 2006); *see* TEX. LOCAL GOV'T CODE ANN. § 211.011(a), (b) (West 2008). The Texas Local Government Code provides:

> (a)     Any of the following persons may present to a district court, county court, or county court at law a verified petition stating that the decision of the board of adjustment is illegal in whole or in part and specifying the grounds of the illegality:
>
> . . . .
>
> (b)     The petition must be presented within 10 days after the date the decision is filed in the board's office.

TEX. LOCAL GOV'T CODE ANN. § 211.011(a), (b).

The Texas Supreme Court has held that jurisdiction to challenge a zoning board's decision exists upon filing a petition within ten days of the board's decision. *Tellez v. City of Socorro*, 226 S.W.3d 413, 414 (Tex. 2007) (per curiam) (failure to specify grounds of illegality and suing city instead of board were procedural defects which could be waived) (citing *Davis v. Zoning Bd. of Adjustment*, 865 S.W.2d 941, 942 (Tex. 1993) (per curiam) (disapproving lower court's decision to extent it held trial court's jurisdiction depended on service and return of writ)). The Texas Supreme Court, though, has not held a defect in verification is jurisdictional.

In *Davis*, the Texas Supreme Court stated, "Once a party files a petition within ten (10) days after a zoning board decision, the court has subject matter jurisdiction to hear and determine a

4

claim that a board of adjustment acted illegally." *Davis*, 865 S.W.2d at 942 & n.3. The Texas Supreme Court reaffirmed this principle in *Tellez*. *See Tellez*, 226 S.W.3d at 414; *see Lamar Corp. v. City of Longview*, 270 S.W.3d 609, 614 (Tex. App.—Texarkana 2008, no pet.).

Even though specifying "how the Board's decision was illegal" is required to be verified, in *Tellez*, the Texas Supreme Court held that the failure to explain such specification was a procedural requirement that could be waived. *Tellez*, 226 S.W.3d at 414. If the failure to include the subject which must be verified is not a jurisdictional requirement, we believe a defect in verification is likewise not a jurisdictional requirement and may also be waived. We further note Texas courts have uniformly held defects in verifications in other contexts can be waived.[5]

Despite conceding TEX. LOCAL GOV'T CODE ANN. § 211.011 constitutes a clear and unambiguous waiver of sovereign immunity,[6] the Board also argues TEX. GOV'T CODE ANN. § 311.034 (West Supp. 2011), requires all statutory prerequisites to suit against a governmental entity to be jurisdictional. Section 311.034, which concerns waiver of sovereign immunity, was

---

[5]*Mekeel v. U.S. Bank Nat'l Ass'n*, 355 S.W.3d 349, 355 (Tex. App.—El Paso 2011, pet. dism'd); *Shutter v. Wells Fargo Bank, N.A.*, 318 S.W.3d 467, 469 (Tex. App.—Dallas 2010, pet. dism'd w.o.j.); *Teixeira*, 107 S.W.3d at 810; *Galaznik v. Galaznik*, 685 S.W.2d 379, 382 (Tex. App.—San Antonio 1984, no writ); *Fleming v. Fannie Mae*, No. 02-09-00445-CV, 2010 Tex. App. LEXIS 9393 (Tex. App.—Fort Worth Nov. 24, 2010, no pet.) (mem. op.); *Reagan v. NPOT Partners I, L.P.*, No. 06-08-00071-CV, 2009 Tex. App. LEXIS 2045 (Tex. App.—Texarkana Mar. 25, 2009, pet. dism'd) (mem. op.); *see also* TEX. R. CIV. P. 90 ("Every defect . . . either of form or of substance, which is not specifically pointed out by exception in writing and brought to the attention of the judge in the trial court . . . shall be deemed to have been waived . . . .").

[6]Although sovereign immunity protects a city for acts committed in the performance of governmental functions, sovereign immunity can be waived. *See City of San Antonio v. Winkenhower*, 875 S.W.2d 388, 390–91 (Tex. App.—San Antonio 1994, writ denied). We further note that "suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009).

amended in 2005 to provide, "Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity." Act of May 25, 2005, 79th Leg., R.S., ch. 1150, § 1, 2005 Tex. Gen Laws 3783 (codified at TEX. GOV'T CODE ANN. § 311.034). The Board argues the verification is a statutory prerequisite because Section 311.016 of the Code Construction Act provides that "'[m]ust' creates or recognizes a condition precedent." TEX. GOV'T CODE ANN. § 311.016 (West 2005). Although the Texas Legislature's use of the word "must" indicates a mandatory provision,[7] a mandatory provision is not necessarily a statutory prerequisite. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 494 (Tex. 2001) ("Even if a statutory requirement is mandatory, this does not mean that compliance is necessarily jurisdictional."); *see City of Desoto v. White*, 288 S.W.3d 389, 393 (Tex. 2009). We note that *Tellez*, 226 S.W.3d at 414, was decided after the above-mentioned amendment. Based on our above discussion of *Tellez*, the verification is not a statutory prerequisite. The statutory prerequisite is the filing of the petition within the requisite time period.

The Board waived any complaint by not objecting in the trial court.[8] *See* TEX. R. APP. P. 33.1; *Tellez*, 226 S.W.3d at 414 (nonjurisdictional defects in petition waived); *Mekeel*, 355 S.W.3d

---

[7]*See Edwards Aquifer Auth. v. Chem. Lime, Ltd.*, 291 S.W.3d 392, 404 (Tex. 2009).

[8]We note that the City did file a plea to the jurisdiction. The City's argument, though, was that SDM brought suit against the wrong party and could not seek monetary damages. After the trial court granted the plea to the jurisdiction, SDM amended its pleadings to bring suit only against the Board and abandoned any claim for monetary damages.

at 355 (verification waived). Because the Board waived any defect in the verification, it is not necessary to decide whether the verification was defective.

## II. The Board Clearly Abused Its Discretion

In its sole issue on appeal, SDM argues the trial court erred in affirming the Board because the Board's action was "illegal." We agree the Board could have only reached one decision. The City of Marshall Zoning Ordinances provide for setback requirements based on property lines, not zoning lines. The only reasonable decision that the Board could have reached was that a setback was not required from the zoning line.

In an appeal from the board's decision, the trial court acts "only as a court of review," and the only question before it is "the legality of the zoning board's order." *Vanesko*, 189 S.W.3d at 771. "To establish that an order is illegal, the party attacking the order must present a 'very clear showing of abuse of discretion.'" *Id.* at 771 (quoting *City of San Angelo v. Boehme Bakery*, 190 S.W.2d 67, 71 (Tex. 1945)). The appealing party must establish that the board could have reasonably reached only one decision. *Id.* Any legal conclusions made by the board, though, are granted less deference and review "is necessarily less deferential when considering any legal conclusions made by the zoning board and is similar in nature to a de novo review." *Id.* Although we grant the same deference to the zoning board as the trial court, we review de novo the trial court's decision. *City of Alamo Heights v. Boyar*, 158 S.W.3d 545, 549 (Tex. App.—San Antonio 2005, no pet.).

7

When construing city ordinances, we apply the same rules of construction that are applicable to statutes. *See Perez v. City of Dallas*, 180 S.W.3d 906, 911 (Tex. App.—Dallas 2005, no pet.). When the language is clear and unambiguous, such language is applied in accordance with its plain and common meaning. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008).

The Board argues Section 23 of the ordinances require the C-2 part of the lot to have a setback consisting of twenty percent of the lot depth. Section 23 of the ordinances consists of a chart of various setback requirements. Section 23[9] provides in pertinent part:

---

[9]The superscripts refer to various special conditions contained in Section 24 and its various subsections. Section 24 provides:

24.11 O District

    (34)    When an Office District adjoins an A-E, R-1, R-2, R-3, R-4, R-5, R-6, MF, or MH District, there shall be a side yard of at least ten (10) percent of the width of the lot with a minimum requirement of fifteen (15) feet. In no case shall a side yard greater than twenty-five (25) feet be required.

    (35)    When an Office District abuts an A-E, R-1, R-2, R-3, R-4, R-5, R-6, MF, or MH District, there shall be a rear yard required which is equal to twenty (20) percent of the depth of the lot, except where a lot is used for an activity which is also permitted in the R-1, R-2, R-3, R4, R-5, R-6, MF, or MH Districts, in which case Item 2 shall apply. In no case shall a rear yard greater than twenty-five (25) feet be required.

    . . . .

24.13 C-2 District

    (40)    No front yard shall be required for any business use in the C-2 District unless the street right-of-way on which the business is located is less than sixty (60) feet in width, in which case the building shall be placed not less than thirty (30) feet from the centerline of said street right-of-way. When frontage on one side of the street

8

|  |  | R-1 [14] Single Family Detached |  . . . . | C-2 [43] Retail Business | . . . . |
|---|---|---|---|---|---|
| Front Yard [8] | . . . . | 30 ft. | . . . . | [40] none required if all block same district | . . . . |
| Front Yard Double Frontage [8] | . . . . | 30 ft. | . . . . | [40] none required unless residential | . . . . |
| Rear Yard [9] | . . . . | 20% of depth of lot | . . . . | 20% of lot depth if adjacent to residential | . . . . |
| Side Yard [9] | . . . . | 5 ft. | . . . . | [41] none required unless adjacent to residential | . . . . |
| Side Yard, Corner Lot [9] | . . . . | 10 ft. | . . . . | [22] 10 ft. | . . . . |
| . . . . | . . . . | . . . . | . . . . | . . . . | . . . . |

between two intersecting streets is located partly in a more restricted zoning district, the front yard shall conform to the more restricted use regulations.

(41)     The same regulations regarding side yards listed in Item 34 under the O District shall apply in the C-2 District.

(42)     The same regulations regarding the rear yards listed in Item 35 under the O District shall apply in the C-2 District.

(43)     Items 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11 in this section apply to the C-2 District.

Based on this chart, the Board argues a setback of twenty percent of the lot's depth applies by matching the C-2 column with the "rear yard" row.

As SDM points out, the problem with this argument is that the ordinances define a "Rear Yard" to be based on a property boundary. Section 19 contains the following relevant definitions:

19.02   Definitions of words and terms.

. . . .

Lot:   Land occupied or intended to be occupied by a building and its accessory buildings, and including such open spaces as are required under this article, and having its principal frontage upon a public street or officially approved place.

Lot; corner:   A lot abutting upon two or more streets at their intersection. A corner lot shall be deemed to front on that street on which it has its least dimensions, unless otherwise specified by the Director of Planning.

. . . .

Lot; interior:   A lot whose side lines do not abut upon any street.

Lot lines:   The lines bounding a lot as herein defined.

Lot of record:   A lot which is part of a subdivision, the plat of which has been recorded in the office of the county clerk, or a parcel of land, the deed for which has been recorded in the office of the County Clerk of Harrison County.

Lot; through:   Any interior lot having frontage on two streets.

. . . .

10

> Rear line:  the boundary line which is opposite and most distant from the front street line.  In the case of uncertainty, the Director of Planning shall determine the rear line.
>
> Rear yard:  the required rear yard is an open space unoccupied and unobstructed extending across the rear of a lot from one side lot line to the other side lot line and having a depth in each district as specified in Section 23.
>
> . . . .
>
> Side line:  Any lot boundary line not a front or rear line thereof.  A side line may be a part of a lot line, a line bordering on an alley or place, or a side street line.  Any lot line not the rear line or a front line shall be deemed a side line.
>
> Side yard: An open, unoccupied space on the same lot with a building situated between the building and side line of the lot and extending through from the front yard to the required rear yard.

A "Rear line" is defined as a "boundary line . . . ."[10]  In this case, each of the two property boundaries which are not side lines abut streets.  It does not have a "rear."  Further, as pointed out by SDM, the ordinances contemplate such a situation by including a definition for a "through lot" and a designation for "Front Yard Double Frontage."[11]  The designation "Front Yard Double Frontage" in Section 23 provides for a front yard setback in the retail business column "if residential" with a corresponding special rule, but there is no designation for a "rear" yard.  There

---

[10]To the extent the ordinances provide the director of planning shall decide an uncertainty, we note a city cannot delegate such authority.  *So. Nat'l Bank of Houston v. City of Austin*, 582 S.W.2d 229, 238 (Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.).

[11]At oral argument, the Board argued the designation for "Front Yard Double Frontage" concerned corner lots.  We note, though, that Section 23 specifically provides for "Side Yard, Corner Lot."

11

is a good reason for this—an interior lot with double frontage does not have a rear yard. The ordinances, as currently written, require the existence of a property boundary for a rear yard to exist.

In the alternative, the Board argues a rear yard exists because a property line formerly existed along the zoning line. The Board relies on a memorandum from the city manager. In the memorandum, however, the city manager concedes the lot has been dual-zoned "since the first zoning ordinance was adopted in Marshall in the early 1950's" and then states, "It is assumed that the zoning designations established in the early 1950's established a zoning district boundary line that approximated these property lines." The memorandum concludes:

> The property line that most closely approximates the zoning district boundary line is the north line of the property described in Volume 30 page 203. As can be seen from the composite drawings, there is some overlap among these properties, and there is also some uncertainty as to exactly how that overlap occurs.

The copy of the deed recorded in Volume 30, page 203 is dated March (blank day), 1893.

Tenisha Fisher, the City's representative, testified at the hearing, "When zoning was put into place in Marshall, they went down Grand Avenue and approximately 120 feet all the way down Grand they determined that to be commercial zoning." Fisher stated the property was "dual zoned, residential and commercial," and later stated it would have to be "replatted" if the residential portion was ever sold. Fisher reconfirmed that the City's argument was

> If you go through every deed that's been recorded, the last deed refers back to the deed prior to that, the deed prior to that, and you'll end up with the property line. I never said the property line was taken out in the last deed, so that's where we stand.

12

The Board argues a lot cannot be merged to avoid requirements of the ordinances. Even if such an exception exists, it would not apply in this case. At best, the evidence presents a mere suspicion that a property line may have existed along the zoning line. The city manager's conclusion that a property line existed along the zoning line is an assumption based on deed records that "closely approximate[]" the zoning line. A conclusion based on assumptions and approximations is nothing more than bare speculation and suspicion. A mere suspicion is no evidence. *See King Ranch*, *Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). Further, even if a property line existed in 1893, the City concedes the property line did not exist at the time the ordinances were adopted. The property lines were changed before adoption of the ordinances. In essence, the City's argument is that two lots were merged to avoid zoning ordinances before any such ordinances were enacted. Two lots cannot be merged with the intent to avoid ordinances not yet in existence.

At oral argument, the Board alternatively argued the disputed lot was actually two lots. While this argument was also made to the trial court, this argument was not made to the Board. The record does not contain any evidence that the City has ever considered or treated the disputed lot as two lots. The City's representative testified to the Board that the lot was "dual zoned, residential and commercial." As noted above, the city manager conceded the lot has been dual zoned "since the first zoning ordinance was adopted in Marshall in the early 1950's." All of the

13

evidence in the record establishes the lot was a single lot when it was zoned both partly commercial and partly residential.

The ordinances say lot line—not zone line. Only one decision could have been reached—that the setbacks do not apply. The Board's decision was illegal and a clear abuse of discretion.

We reverse the Board's decision and render judgment in favor of SDM.[12]

Jack Carter
Justice

Date Submitted:     April 19, 2012
Date Decided:     May 4, 2012

---

[12]We note a prevailing party is normally awarded costs under TEX. R. APP. P. 43.4, but recovery of costs in a zoning appeal requires a finding of malice. *See* TEX. LOCAL GOV'T CODE ANN. § 211.011(f) (West 2008). Because there is no evidence of malice, SDM cannot recover costs. The parties will pay their own costs incurred. *See* TEX. R. APP. P. 43.4 ("the court of appeals may tax costs otherwise as required by law or for good cause").