**Opinion of August 23, 2012 Withdrawn, Motion for Rehearing Overruled, Affirmed, and Substitute Opinion filed December 4, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00352-CV

**CITY OF HOUSTON, Appellant**

**V.**

**JAMES & ELIZABETH CARLSON, JOSE & LIZ REFERENTE, ROGER CAMPODONICO, SERGIO A. LOPEZ, YAN WANG & HUI YAO, DANIEL & ANDREA SELUK, ROBERT HUTCHINS, ROBERT & KELLY FARFAN, BONNIE CORBETT, HELEN PAGOLA, AND MANNY ESPINOLA, Appellees**

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2008-57899**

# S U B S T I T U T E   O P I N I O N

The opinion of August 23, 2012 is withdrawn, and this opinion is substituted in its place.

Appellant City of Houston appeals from the district court's denial of the City's motion for judgment and the entry of judgment reversing the City's order requiring appellees to vacate their property. In three issues, the City argues the district court erred

in reversing the City's order to vacate and entering final judgment in favor of appellees because (1) the district court did not have jurisdiction over appellees' claims against the City, (2) the City did not deprive appellees of their procedural and substantive due process rights under the United States and Texas Constitutions when it ordered appellees to vacate their property, and (3) the district court improperly substituted its judgment for that of the administrative hearing officer who affirmed the order to vacate. We affirm.

## BACKGROUND

Appellees own condominium units in the Park Memorial complex in Houston. In July 2008, a Park Memorial condominium unit owner sent a letter to the City urgently requesting the City to inspect the property because his insurer would not insure his unit due to structural problems at Park Memorial.[1] He attached an engineer's report in which the engineer opined, "The buildings are too unsafe to be inhabited. . . . The buildings are worsening and may experience catastrophic failure at any time." In response, the City conducted an investigation and discovered none of the buildings in the Park Memorial complex had certificates of occupancy, which was a required prerequisite to occupy the complex under City ordinance.[2] On July 16, the City posted a notice at the complex that stated, "The City of Houston Building Code requires a Certificate of Occupancy to be posted in a conspicuous place on the premises of all commercial buildings."[3] The notice gave property owners ten days to apply for certificates of occupancy and warned that "[f]ailure to comply with th[e] notice may subject [the property owners] to a municipal court citation." The same day, the City inspected the parking garage and posted a notice designating the building as an unsafe "Restricted Area" and prohibiting anyone from parking inside, walking into, or occupying the building.

---

[1] That homeowner is not a party to this action.

[2] *See* Houston, Tex., Ordinance 2006-5 (Jan. 4, 2006) (adopting and incorporating Int'l Bldg. Code (2003)); Int'l Bldg. Code § 110.1 (2003) (requiring certificates of occupancy for commercial buildings).

[3] The complex consists of five two-story buildings. The City argues the complex is "commercial property" under the Local Government Code for which a certificate of occupancy is required. Tex. Loc. Gov't Code § 214.211(3), (5).

2

On July 24, the City inspected the complex and found many violations of building, electrical, and plumbing codes. The City red-tagged several plumbing and electrical hazards. On July 29, the City's building official posted a notice addressed to "occupants, renters, residents and/or owners of the [complex]" finding that three of the buildings in the complex "pose a serious and immediate hazard to the occupants" and "encouraging every resident to seek shelter elsewhere."

The City subsequently contracted with David Collins, a structural engineer, to conduct an independent investigation of the structural integrity of the buildings in the complex. On August 1, Collins reported as follows:

> After reviewing and evaluating the conditions of all the buildings, it is our professional opinion that the units are unsafe. The wood structural members have lost [their] structural integrity. The members are water logged, dry rotted and termite infected. Steel members are corroding and have deteriorated.

> The parking garage area where the beam(s) have totally deteriorated should not be occupied by cars and/or tenants. . . . The buildings appear to be structurally sound but in observing the main structural members of any of the buildings; [sic] there are serious damages and danger of walls and entire building[s] collapsing.

After reviewing Collins's report, the City issued an order on August 15 directing all Park Memorial residents to vacate all Park Memorial buildings by September 15.

The City sent a letter to Park Memorial's residents on August 20 informing them of their right under City of Houston Building Code section 116 to request an administrative hearing to contest the August 15 order to vacate. The City held an administrative hearing on September 9, and the administrative hearing officer affirmed the order to vacate in a letter dated September 10. On September 11, the City extended the deadline to vacate the property until September 22 due to the approach of Hurricane Ike, and on September 19, the City again extended the deadline until October 1 because Hurricane Ike "reduced the availability of temporary housing in the Houston area."

Appellees timely filed a petition for writ of certiorari in district court on October 1 seeking judicial review of the order to vacate.[4] *See* Tex. Local Gov't Code § 214.0012(a) ("Any owner, lienholder, or mortgagee of record of property jointly or severally aggrieved by an order of a municipality issued under Section 214.001 may file in district court a verified petition setting forth that the decision is illegal, in whole or in part, and specifying the grounds of the illegality."). Appellees also requested a temporary restraining order and a temporary injunction. The district court signed an order on October 1 granting appellees' request for a temporary restraining order.

The City filed a plea to the jurisdiction on October 8. The district court denied appellees' request for a temporary injunction in an order signed October 31 and granted the City's plea to the jurisdiction in an order signed November 7. The property owners timely appealed, challenging the district court's order granting the City's plea to the jurisdiction. We reversed, finding the property owners' pleading contained sufficient facts to affirmatively demonstrate the district court's jurisdiction under section 214.0012, and remanded for proceedings consistent with our opinion. *See Carlson v. City of Houston*, 309 S.W.3d 579, 589 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

On remand, the City filed a motion for summary judgment, and appellees filed a motion for final judgment. On August 27, 2010, the district court held a hearing pursuant to section 214.0012. *See* Tex. Local Gov't Code § 214.0012(f) ("Appeal in the district court shall be limited to a hearing under the substantial evidence rule. The court may reverse or affirm, in whole or in part, or may modify the decision brought up for review."). The district court signed a final judgment on September 17 reversing the order to vacate. The City filed a motion for new trial, requesting to "better establish the record" for appeal, which the district court granted. The City then filed a cross-motion for judgment and response to appellees' motion for judgment. On March 18, 2011, the district court denied the City's cross motion and signed a second final judgment reversing the order to vacate.

---

[4] Appellees do not seek damages in connection with the order to vacate.

4

**DISCUSSION**

The City appeals the district court's judgment on three grounds, asserting that (1) the district court lacked jurisdiction over nine of the appellees because they did not verify the petition filed in district court and the district court lost jurisdiction over the remaining appellees because they did not verify their amended petition; (2) the City did not deprive appellees of their rights to procedural and substantive due process by ordering appellees to vacate their property before conducting a hearing; and (3) the City presented substantial evidence to support the administrative hearing officer's decision affirming the order to vacate. We hold that the district court did not err in reversing the order to vacate because it had jurisdiction under section 214.0012 and the City deprived appellees of their right to procedural due process.

## I. Jurisdiction

The City argues that a district court does not have jurisdiction over an action filed pursuant to Local Government Code section 214.0012 unless a *verified* petition for writ of certiorari is filed.[5] Since only seven of the sixteen appellees verified their petition, the City reasons that the district court did not have jurisdiction over the claims of the remaining nine appellees. The City also argues that the district court lost jurisdiction over all of appellees' claims when none of the appellees verified their amended petition. Appellees respond that defects in verification are not jurisdictional and, even if they were, verification by all the appellees was not required under Section 214.0012 to invoke the district court's jurisdiction. We hold a defect in verification under Section 214.0012 is not jurisdictional and the City waived any complaint regarding defects in verification by not specially excepting.

Under section 214.001, "[a] municipality may, by ordinance, require the vacation, relocation of occupants, securing, repair, removal, or demolition of a building that is . . .

---

[5] We recently held "the pleadings [in this case] contain sufficient facts to affirmatively demonstrate the district court's jurisdiction under section 214.0012." *Carlson*, 309 S.W.3d at 589. However, the City did not argue in that appeal that a defect in verification deprives a district court of jurisdiction. *Id*.

5

dilapidated, substandard, or unfit for human habitation and a hazard to the public health, safety, and welfare[.]" *Id.* § 214.001(a)(1). Section 214.0012 provides the mechanism by which a property owner may appeal a municipality's decision to take any of the actions authorized by section 214.001: "Any owner, lienholder, or mortgagee of record of property jointly or severally aggrieved by an order of a municipality issued under Section 214.001 may file in district court a verified petition setting forth that the decision is illegal, in whole or in part, and specifying the grounds of the illegality." *Id.* § 214.0012(a).

The Texas Supreme Court has not addressed whether filing a petition—verified or otherwise—under section 214.0012 invokes a district court's jurisdiction. The court has held, however, that jurisdiction exists under section 211.011 of the Local Government Code to challenge a zoning board's decision by filing a "verified petition stating that the decision of the board of adjustment is illegal . . . and specifying the grounds of the illegality[.]" *Tellez v. City of Soccorro*, 226 S.W.3d 413, 414-15 (Tex. 2007) (per curiam) (citing *Davis v. Zoning Bd. of Adjustment*, 865 S.W.2d 941, 942 (Tex. 1993) (per curiam) ("Once a party files a petition . . . the court has subject matter jurisdiction to hear and determine a claim that a board of adjustment acted illegally.") and Tex. Local Gov't Code § 211.011(a)). The language of section 214.012(a), applicable to municipalities, is nearly identical to the language of section 211.011(a), applicable to boards of adjustment. *Compare* Tex. Local Gov't Code § 214.012(a) ("Any owner, lienholder, or mortgagee of record of property jointly or severally aggrieved by an order of a municipality issued under Section 214.001 may file in district court **a verified petition setting forth that the decision is illegal, in whole or in part, and specifying the grounds of the illegality**.") *with id.* § 211.011(a) ("Any of the following persons may present to a district court, county court, or county court at law **a verified petition stating that the decision of the board of adjustment is illegal in whole or in part and specifying the grounds of the illegality**[.]") (emphasis added); *see also Teague v. City of Jacksboro*, 190 S.W.3d 813, 820 (Tex. App.—Fort Worth 2006, pet. denied) (noting similarities between the two

6

sections).  Thus, we hold that filing a petition under section 214.0012 likewise invokes a district court's jurisdiction.  *See Davis*, 865 S.W.2d at 942; *see also Teague*, 190 S.W.3d at 820 (holding plaintiff was required to file petition but not required to request issuance of writ of certiorari to invoke trial court's jurisdiction under section 214.0012).

We also must answer whether verification is a jurisdictional prerequisite to invoke the district court's jurisdiction.  The Texas Supreme Court has not held a defect in verification under either section 211.011 or 214.0012 fails to invoke a court's jurisdiction.  The court has held, however, that a plaintiff's failure to comply with section 211.011(a) by failing to specify how the board's decision was illegal was a procedural defect that could be waived.  *Tellez*, 226 S.W.3d at 414.  Our sister court recently held, based on the supreme court's reasoning in *Tellez,* "If the failure to include the subject which must be verified is not a jurisdictional requirement, we believe a defect in verification is likewise not a jurisdictional requirement and may also be waived."  *S. Dev. of Miss. v. Zoning Bd. of City of Marshall*, 366 S.W.3d 732, 735-36 (Tex. App.—Texarkana 2012, no pet.).  This interpretation of section 211.011 comports with the language of section 214.0012.  We thus adopt the reasoning of the *City of Marshall* case and hold that a defect in verification does not deprive a district court of jurisdiction under section 214.0012.

The City argues the verification requirement is jurisdictional because statutory waivers of governmental immunity must be strictly construed.  However, compliance with a mandatory provision in a statute is not always a jurisdictional prerequisite.  *See City of DeSoto v. White*, 288 S.W.3d 389, 393 (Tex. 2009) (noting, outside of sovereign immunity context, "[W]e have been reluctant to conclude that a provision is jurisdictional, absent clear legislative intent to that effect"); *see also City of Marshall*, 366 S.W.3d at 736.  Based on our above analysis, verification is not a prerequisite to a suit under section 214.0012.  The statutory prerequisite is the filing of the petition within the requisite time period.  *See City of Marshall*, 366 S.W.3d at 736.

Although the City raised its verification argument regarding jurisdiction in a

second amended answer, it waived any complaint that the petition was defective in form by failing to specially except.  *See* Tex. R. Civ. P. 90; *see also Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 346 (Tex. 2011); *Aquila Sw. Pipeline, Inc. v. Harmony Exploration, Inc.*, 48 S.W.3d 225, 233 (Tex. App.—San Antonio 2001, pet. denied) (noting lack of verification is a defect in form that may be waived if no special exception is filed).  This would have given appellees an opportunity to amend the petition to correct any defects in verification.  *See Warwick Towers Council of Co-Owners v. Park Warwick*, L.P., 298 S.W.3d 436, 444 (Tex. App.—Houston [14th Dist.] 2009, no pet.).  Accordingly, we neither decide whether all appellees were required to verify the petition nor whether the amended petition was required to be verified.  *See City of Marshall*, 366 S.W.3d at 736; *see also Tellez*, 226 S.W.3d at 414 (holding nonjurisdictional defects in petition filed under section 211.011 are waived); Tex. R. App. P. 33.1(a).  We overrule the City's first issue.

## II.     Procedural Due Process

In its second issue, the City challenges the district court's entry of final judgment in favor of appellees, reversing the City's order to vacate, on the ground that the City did not deprive appellees of their rights to procedural and substantive due process under the United States and Texas Constitutions by ordering appellees to vacate their property.  For the reasons set forth below, we hold the City deprived appellees of their right to procedural due process.  We thus do not need to address whether the City deprived appellees of their right to substantive due process.

"A deprivation of personal property without due process violates the United States and Texas Constitutions."  *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 658 (Tex. 2004); *see also Smith v. City of League City*, 338 S.W.3d 114, 127 (Tex. App.—Houston [14th Dist.] 2011, no pet.).  The right to procedural due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner with respect to a decision affecting an individual's property rights. *Tex. Workers' Comp. Comm'n*, 136 S.W.3d at 658; *see also Smith*, 338 S.W.3d at 127.

8

## A. Appellees Have Property Rights

The City first argues appellees have no property rights in the condominium units they own because they were occupying the units illegally without certificates of occupancy. A property interest protected by procedural due process arises where an individual has a legitimate claim of entitlement that is created, supported, or secured by rules or mutually explicit understandings. *Turner v. Perry*, 278 S.W.3d 806, 822 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). Property interests may also be created by state law. *Id.*

Under Texas common law, property ownership comes with a "bundle of rights" which includes, among other things, the rights of possession and use. *Evanston Ins. Co. v. Legacy of Life, Inc.*, No. 11-0519, 2012 WL 2476935, at *4 (Tex. June 29, 2012). However, a person is not required to have the full, unfettered bundle of property rights, such as the right of possession, for a thing to be classified as his or her property. *Id.* at *5. Property owners do not have a constitutionally protected, vested right to use property in any certain way without restriction. *City of La Marque v. Braskey*, 216 S.W.3d 861, 863 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Thus, limitations on property rights may be imposed by appropriate government action under its police power. *Severance v. Patterson*, No. 09-0387, 2012 WL 1059341, at *2 (Tex. Mar. 30, 2012). The City does not cite, however, any statute or case holding that noncompliance with an ordinance automatically divests an owner of his property rights and, thus, relieves the government of the constitutional duty to provide procedural due process. A governmental decision to take away possession and use of property clearly diminishes the bundle of property rights associated with that property, so the government first must afford the property owner an appropriate and meaningful opportunity to be heard. *See Smith*, 338 S.W.3d at 127; *see also City of Paris v. Abbott*, 360 S.W.3d 567, 582 (Tex. App.—Texarkana 2011, pet. denied) (noting individual deprived of property right must be given appropriate and meaningful opportunity to be heard consistent with requirements of procedural due process). We conclude appellees had property rights to

possess and use their homes.  Thus, appellees were entitled to an appropriate and meaningful opportunity to be heard before the City could deprive them of these valuable property rights.

## B.  Section 214.001 Applies

Having determined that appellees had protected property interests in their condominium units, we must now identify the process required to protect their interests. *See Turner*, 278 S.W.3d at 823.  The City argues that the procedure outlined in section 214.001 of the Local Government Code is inapplicable to this case.[6]

The order to vacate was served on August 15, 2008 and states, "Pursuant to Section 104.12 of the [Houston Building] Code, the Building Official hereby ORDERS all Buildings on the Property to be VACATED no later than 6:00 p.m. on Monday, September 15, 2008."  Section 104.12 provides, in relevant part, as follows:

> Whenever any building or structure . . . is being used contrary to this code or otherwise in violation of this code, the building official may, by notice to the owner or the owner's representative and to all users of the structure, order that any or all uses of the structure be discontinued or that the structure, or a portion thereof, be vacated, within such time and for as long as the building official reasonably prescribes.  If the use or occupancy of the structure creates a serious and immediate hazard to human life or to property, the building official shall order the use discontinued immediately and may order the structure, or a portion thereof, vacated immediately.  In the absence of a serious and immediate hazard to human life or to property, the building official shall not order a use discontinued and shall not issue an order to vacate until five business days after the building official has given the required notice of a right to a hearing pursuant to Section 104.12.1 and Section 116 of this code.

Houston, Tex., Bldg. Code § 104.12 (2006).  The City argues section 104.12 "authorizes Houston's building official to quickly take action when confronted **with a dangerous emergency situation**," whereas "the Chapter 214 procedures are designed to ameliorate or demolish dangerous structures which have become neighborhood nuisances, but there

---

[6] The City takes the inconsistent positions that chapter 214 applies to this case for purposes of jurisdiction but not for purposes of due process.

is no imminent danger of a 'serious and immediate hazard' to humans." (Emphasis added.)

We already have held that "section 214.0012 applies to this case." *Carlson*, 309 S.W.3d at 589. Section 214.0012 provides for judicial review of a municipality's order "issued under Section 214.001." Tex. Local Gov't Code § 214.0012(a); *Carlson*, 309 S.W.3d at 587. We also have held that emergency circumstances did not prompt the City's issuance of the order to vacate. *See Carlson*, 309 S.W.3d at 588.[7] The City's argument that the procedure outlined in section 214.001 does not apply is without merit.[8]

Because we have determined that appellees had a protected property interest and section 214.001 applies here, we must also determine whether the City complied with the procedural requirements of section 214.001.

---

[7] [T]he record here does not support the City's assertion that emergency circumstances prompted issuance of the August 15, 2008 order to vacate. The City became aware of concerns about the structural integrity of the Park Memorial buildings in July 2008 but did not issue the order to vacate until August 15, 2008. The order gave residents 30 days to vacate the buildings. On September 11, 2008, the City extended the deadline until October 1, 2008 due to the approach of Hurricane Ike. Hurricane Ike made landfall on Galveston Island on September 13, 2008. The deadline extension as Hurricane Ike approached defeats any claim that an emergency existed at Park Memorial; the City is hard-pressed to suggest that portions of the Park Memorial complex were in danger of immediate collapse but occupants nonetheless were allowed to ride out a hurricane there.

*Carlson*, 309 S.W.3d at 588. Moreover, we do not agree that Chapter 214 is inapplicable to an emergency situation. *See Kinnison v. City of San Antonio*, No. 11-50333, 2012 WL 1957937, at *5 n.11 (5th Cir. May 31, 2012) (slip op.) ("Section 214.002 . . . applies '[i]f the governing body of a municipality finds that a building . . . is *likely to endanger* persons or property.'").

[8] The City also argues Building Code section 104.12 was enacted under Chapter 54 of the Local Government Code. Chapters 54 and 214 are not mutually exclusive: rather, they work in concert to allow municipalities to create and enforce ordinances and to provide citizens the procedure to appeal municipality decisions. *See Kuykendall v. City of San Antonio*, 360 S.W.3d 670, 672-73 (Tex. App.—El Paso 2012, no. pet.) (citing Tex. Local Gov't Code §§ 54.001, 54.035, 214.001 et seq.). Chapter 54 "provides municipalities with the general authority to enforce rules, ordinances, and police regulations enacted by their governing bodies," while chapter 214 "provides municipalities with specific authority to pass substantive ordinances regulating the identification, repair, and demolition of substandard buildings." *Id*. at 672 (citing Tex. Local Gov't Code §§ 54.001(a), 214.001(a)). "Chapter 214 contains *minimal procedural standards* for administrative proceedings related to the enforcement of those standards, as well as the procedures for judicial review." *Id*. at 672-73 (citing Tex. Local Gov't Code §§ 214.001, 214.0012) (emphasis added).

## 1. Notice and Hearing Requirements under 214.001 Not Met

As set forth above, section 214.001 allows a municipality, among other things, to require by ordinance the vacation of a building that is "dilapidated, substandard, or unfit for human habitation and a hazard to the public health, safety, and welfare." Tex. Local Gov't Code § 214.001(a)(1). The ordinance must

> (1) establish minimum standards for the continued use and occupancy of all buildings regardless of the date of their construction; (2) provide for giving proper notice to the owner of a building; and (3) provide for a public hearing to determine whether a building complies with the standards set out in the ordinance.

*Id*. § 214.001(b). The notice "must include a statement that the owner, lienholder, or mortgagee will be required to submit at the hearing proof of the scope of any work that may be required to comply with the ordinance and the time it will take to reasonably perform the work." *Id*. § 214.001(c).

Section 214.001 enumerates two alternative procedures for conducting a public hearing to determine whether a building complies with the standards set out in the ordinance. Both of these procedures require a public hearing to determine whether the building "is found in violation of the standards set out in the ordinance" *before* the City issues an order that the building "be vacated, secured, repaired, removed, or demolished by the owner."[9] *Id*. § 214.001(d), (e). Here, it is undisputed that the City did not conduct a hearing before ordering appellees to vacate Park Memorial. Thus, the City did not

---

[9] Subsection (d), in relevant part, states, "After the public hearing, if a building is found in violation of standards set out in the ordinance, the municipality may order that the building be vacated, secured, repaired, removed, or demolished by the owner within a reasonable time as provided by this section." Tex. Local Gov't Code § 214.001(d). "If the owner does not take the ordered action within the allotted time, the municipality [must also] make a diligent effort to discover each mortgagee and lienholder having an interest in the building or the property on which the building is located" and notify them, among other things, that "the municipality will vacate, secure, remove, or demolish the building or relocate the occupants of the building if the ordered action is not taken within a reasonable time." *Id*. Alternatively, subsection (e) allows the municipality to make a diligent effort to discover each mortgagee and lienholder before the public hearing and give them an opportunity to comment at the hearing. *Id*. § 214.001(e). Under subsection (e), the municipality is not required to furnish any additional notice to the mortgagee than a copy of the order if the owner fails to take the ordered action timely. *Id*.

comply with the procedural requirements of section 214.001.[10]

## 2. City's Substitute Procedure Not Sufficient

We must further determine whether the substitute procedure conducted by the City deprived appellees of their right to procedural due process. The City argues that it did not because (1) the City posted around Park Memorial notices that each building was required to have a certificate of occupancy and notices that alerted owners and residents of "the hazardous structural, electrical and plumbing code violations found at [Park Memorial]"; (2) the City held an administrative hearing that thirteen out of sixteen appellees and their attorney attended; and (3) appellees did not intend to repair Park Memorial and would never have received a certificate of occupancy.

We cannot agree that the City's substitute procedure protected appellees' due process rights. By enacting section 214.001, the State provided building owners with procedural safeguards to reduce the risk that they would be deprived of their property without a meaningful opportunity to comply with a municipality's ordinance requiring "minimum standards for the continued use and occupancy of all buildings." *See id.* § 214.001(b)(1); *see also Turner*, 278 S.W.3d at 823 (noting State enacted relevant Government Code sections to provide public employees with procedural safeguards to reduce risk that adverse employment actions would be based on unsubstantiated complaints).

Instead of first conducting a public hearing as required by section 214.001 to determine whether the Park Memorial buildings were substandard, the City issued the

---

[10] The City ordered appellees to vacate Park Memorial "[p]ursuant to Section 104.12 of the [Houston Building] Code." Appellees argue section 104.12, a City ordinance, is void because it conflicts with section 214.001, a Texas statute. We need not reach that issue because the City did not comply with the procedural requirements of either section 104.12 or section 214.001. Section 104.12 requires the building official to order a structure *to be vacated immediately* if it creates a serious and immediate hazard to human life or property, which the City did not do. Moreover, as set forth above, we have held as a matter of law that no emergency existed at Park Memorial. *Carlson*, 309 S.W.3d at 588. Section 104.12 requires the City to give the owner notice of the right to a hearing five business days *before* a notice to vacate is issued with regard to a structure that does not create a serious and immediate hazard to human life or property. The City also did not do that.

13

order to vacate on August 15, 2008, requiring appellees to vacate Park Memorial by September 15 or face criminal penalties.[11] On August 20, the City sent appellees notice that they had a "right to a hearing" but "no hearing need[ed] to be conducted" if appellees did not request one. The City did not notify appellees what they would be required to prove at the hearing, specifically that they would be "required to submit . . . proof of the scope of any work that may be required to comply with the [City's] ordinance and the time it [would] take to reasonably perform the work" as required by section 214.001(c). Appellees requested a hearing, but it was not held until September 9, six days before appellees were ordered to vacate Park Memorial.

The City argues the notices it posted at Park Memorial were sufficient to notify appellees that they were required to make repairs and obtain certificates of occupancy. However, the notices did not warn appellees that the consequences of inaction might result in them having to vacate their property.[12] The City further argues that the administrative hearing provided appellees with procedural due process. We do not agree that the administrative hearing, conducted six days before appellees were ordered to vacate Park Memorial, provided appellees an opportunity to be heard at a meaningful time in a meaningful manner, particularly in light of the fact that the City did not notify appellees of what they would be required to prove at the hearing. *See Tex. Workers' Comp. Comm'n*, 136 S.W.3d at 658 (noting opportunity to be heard must be at meaningful time in meaningful manner). In reaching this conclusion, we find it particularly significant that the City did not attempt to comply with section 214.001's specific procedures prerequisite to a municipality ordering occupants to vacate a substandard building. *See Turner*, 278 S.W.3d at 824 ("[A]ppellants' failure to follow statutory procedure magnified the risk that adverse employment action would be taken based on unsubstantiated complaints.").

---

[11] That deadline was later extended to October 1 due to the approach of Hurricane Ike.

[12] In fact, the notices warned only that "[f]ailure to comply with th[e] notice may subject [the property owners] to a municipal court citation."

Finally, the City argues appellees suffered no injury in that (1) most of them attended the administrative hearing; (2) they all had counsel present at the hearing; and (3) they never intended to repair Park Memorial.[13] We do not agree that appellees did not suffer injury when they did not receive the process required by section 214.001. A hearing held before the order to vacate was issued would have given appellees (1) an opportunity to present evidence disputing that the buildings in Park Memorial were "dilapidated, substandard, or unfit for human habitation and a hazard to the public health, safety, and welfare," *see* Texas Local Government Code section 214.001(a)(1); (2) a longer time period to repair the buildings at Park Memorial and obtain certificates of occupancy; and (3) an opportunity to present evidence of what repairs needed to be made and how much time the repairs would take. Moreover, the City presented no evidence that appellees never intended to repair Park Memorial.[14] We conclude that the City deprived appellees of their right to procedural due process when it failed to comply with the requirements of section 214.001. We thus need not reach the City's argument that it did not deprive appellees of substantive due process. We overrule the City's second issue.

Based on our above analysis, we hold the district court did not err in reversing the City's order to vacate and entering final judgment in favor of appellees. We do not reach the City's third issue regarding whether the district court improperly substituted its judgment for that of the administrative hearing officer who affirmed the order to vacate.

---

[13] The City argues that a failure to allege an injury constitutes a lack of standing to pursue a claim. The term "standing," however, may be used errantly in the City's brief. The general test for standing is whether there is a real controversy between the parties that will actually be determined by the judicial declaration sought. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993); *Lazarides v. Farris,* 367 S.W.3d 788, 801 (Tex. App.—Houston [14th Dist.] 2012, no pet.). As a general rule, to have standing, an individual must demonstrate a particularized interest in a conflict distinct from that sustained by the public at large. *S. Tex. Water Auth. v. Lomas,* 223 S.W.3d 304, 307 (Tex. 2007); *see also Lazarides*, 367 S.W.3d at 801. We see no interest more particularized than that of a homeowner facing an order to vacate his or her home. We interpret the City's argument, therefore, as an assertion that adequate due process was afforded appellees.

[14] The City argues that appellees never intended to repair Park Memorial because appellees did not apply for emergency permits that the City made available to make repairs on the property. We do not find this to be evidence that appellees "never intended to repair [Park Memorial]," as the City contends.

**CONCLUSION**

Having found the district court did not err in entering final judgment in favor of appellees and reversing the order to vacate, we affirm the judgment of the district court.


/s/     Martha Hill Jamison
Justice

Panel consists of Chief Justice Hedges and Justices Jamison and McCally.