**Reversed and Remanded and Majority and Dissenting Opinions filed May 2, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00099-CV

---

**JAMES & ELIZABETH CARLSON, JOSE & ELIZABETH REFERENTE, ROGER CAMPODONICO, SERGIO A. LOPEZ, YAN WANG, HUI YAO, DANIEL & ANDREA SELUK, ROBERT HUTCHINS, ROBERT & KELLY FARFAN, BONNIE CORBETT, HELEN PAGOLA, & MANNY ESPINOLA,** Appellants

**V.**

**CITY OF HOUSTON, Appellee**

---

**On Appeal from the County Civil Court at Law No. 1**
**Harris County, Texas**
**Trial Court Cause No. 973590**

---

## M A J O R I T Y   O P I N I O N

Appellants James and Elizabeth Carlson, Jose and Elizabeth Referente, Roger Campodonico, Sergio A. Lopez, Yan Wang, Hui Yao, Daniel and Andrea Seluk, Robert Hutchins, Robert and Kelly Farfan, Bonnie Corbett, Helen Pagola,

and Manny Espinola (Homeowners) appeal from an order granting the City of Houston's plea to the jurisdiction. We reverse and remand for proceedings consistent with this opinion.

## FACTUAL BACKGROUND

Homeowners own condominium units in the Park Memorial complex in Houston. In July 2008, a Park Memorial condominium unit owner sent a letter to the City urgently requesting the City to inspect the property because his insurer would not insure his unit due to structural problems at the complex.[1] He attached an engineer's report in which the engineer opined, "The buildings are too unsafe to be inhabited. . . . The buildings are worsening and may experience catastrophic failure at any time." In response, the City conducted an investigation and discovered none of the buildings in the Park Memorial complex had certificates of occupancy, which the City contends was required to occupy the complex under City ordinance.[2] On July 16, the City posted a notice at the complex that stated, "The City of Houston Building Code requires a Certificate of Occupancy to be posted in a conspicuous place on the premises of all commercial buildings."[3] The notice gave property owners ten days to apply for certificates of occupancy and warned that "[f]ailure to comply with th[e] notice may subject [the property owners] to a municipal court citation." The same day, the City inspected the parking garage and posted a notice designating the building as an unsafe "Restricted Area" and prohibiting anyone from parking inside, walking into, or

---

[1] That homeowner is not a party to this action.

[2] *See* Houston, Tex., Ordinance 2006-5 (Jan. 4, 2006) (adopting and incorporating Int'l Bldg. Code (2003)); Int'l Bldg. Code § 110.1 (2003) (requiring certificates of occupancy for commercial buildings).

[3] The City argues the complex is "commercial property" under the Local Government Code for which a certificate of occupancy is required. Tex. Loc. Gov't Code § 214.211(3), (5).

2

occupying the building.

On July 24, the City inspected the complex and found many violations of building, electrical, and plumbing codes. The City red-tagged several plumbing and electrical hazards. On July 29, the City's building official posted a notice addressed to "occupants, renters, residents and/or owners of the [complex]" finding that three of the buildings in the complex "pose a serious and immediate hazard to the occupants" and "encouraging every resident to seek shelter elsewhere."

The City subsequently contracted with David Collins, a structural engineer, to conduct an independent investigation of the structural integrity of the buildings in the complex. On August 1, Collins reported as follows:

> After reviewing and evaluating the conditions of all the buildings, it is our professional opinion that the units are unsafe. The wood structural members have lost [their] structural integrity. The members are water logged, dry rotted and termite infected. Steel members are corroding and have deteriorated.
>
> The parking garage area where the beam(s) have totally deteriorated should not be occupied by cars and/or tenants. . . . The buildings appear to be structurally sound but in observing the main structural members of any of the buildings; [sic] there are serious damages and danger of walls and entire building[s] collapsing.

After reviewing Collins's report, the City issued an order on August 15 stating that "use or occupancy . . . creates a hazard to human life or property" and directing all Park Memorial residents to vacate all Park Memorial buildings by September 15. The City sent a letter to Park Memorial's residents on August 20 informing them of their right under City of Houston Building Code section 116 to request an administrative hearing to contest the August 15 order to vacate. The City held an administrative hearing on September 9, and the administrative hearing officer affirmed the order to vacate in a letter dated September 10. The City

3

extended the deadline to vacate the property until September 22 due to the approach of Hurricane Ike, and on September 19, the City again extended the deadline until October 1 because Hurricane Ike "reduced the availability of temporary housing in the Houston area."

## PROCEDURAL HISTORY

**Judicial Review of Order to Vacate**.  In a related lawsuit, Homeowners timely filed a petition for writ of certiorari in the 152nd District Court of Harris County on October 1, 2008, seeking judicial review of the order to vacate.  *See* Tex. Local Gov't Code § 214.0012(a) ("Any owner, lienholder, or mortgagee of record of property jointly or severally aggrieved by an order of a municipality issued under Section 214.001 may file in district court a verified petition setting forth that the decision is illegal, in whole or in part, and specifying the grounds of the illegality.").  Homeowners also requested a temporary restraining order and a temporary injunction.  The district court signed an order on October 1 granting Homeowners' request for a temporary restraining order.

The City filed a plea to the jurisdiction in that lawsuit on October 8.  The district court denied Homeowners' request for a temporary injunction in an order signed October 31 and granted the City's plea to the jurisdiction in an order signed November 7.  The TRO expired, and Homeowners were required to vacate the property.  Homeowners timely appealed, challenging the district court's order granting the City's plea to the jurisdiction.  We reversed, finding the Homeowners' pleadings contained sufficient facts to affirmatively demonstrate the district court's jurisdiction under section 214.0012, and remanded for proceedings consistent with our opinion.  *See Carlson v. City of Houston*, 309 S.W.3d 579, 589 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (*Carlson I*).

4

On remand, the City filed a motion for summary judgment, and Homeowners filed a motion for final judgment. On August 27, 2010, the district court held a hearing pursuant to section 214.0012. *See* Tex. Local Gov't Code § 214.0012(f) ("Appeal in the district court shall be limited to a hearing under the substantial evidence rule. The court may reverse or affirm, in whole or in part, or may modify the decision brought up for review."). The district court signed a final judgment on September 17, 2010, reversing the order to vacate. The City filed a motion for new trial, requesting to "better establish the record" for appeal, which the district court granted. The City then filed a cross-motion for judgment and response to Homeowners' motion for judgment. On March 18, 2011, the district court denied the City's cross-motion and signed a second final judgment reversing the order to vacate.

The City timely appealed, challenging the district court's final judgment, raising new arguments challenging the district court's jurisdiction over Homeowners' claims, and asserting that the City did not deprive Homeowners of due process when it ordered them to vacate their property and that the district court improperly substituted its judgment for that of the administrative officer who affirmed the order to vacate. *See City of Houston v. Carlson*, 393 S.W.3d 350, 353 (Tex. App.—Houston [14th Dist.] 2012, no. pet. h.) (*Carlson II*). We affirmed, holding the district court had jurisdiction over Homeowners' claims against the City and the City deprived Homeowners of their rights to procedural due process when the City failed to provide Homeowners with adequate notice and a public hearing in compliance with section 214.001 before ordering them to vacate their property. *Id.* at 362 (citing Tex. Gov't Code § 214.001 (requiring proper notice and public hearing to determine whether a building "is found in violation of the standards set out in the ordinance" before a municipality may issue an order that

5

the building "be vacated, secured, repaired, removed, or demolished by the owner")).

**The Underlying Lawsuit**.   Homeowners filed the underlying lawsuit on September 30, 2010, bringing an inverse condemnation claim against the City under the Texas Constitution alleging a "taking" based upon the loss of use of their homes after being forced to vacate without being afforded procedural due process. *See* Tex. Local Gov't Code § 214.001.   Homeowners further alleged that, because the City ordered the homes vacated as a matter of public health and safety, the taking was for an alleged public use.   The City filed a plea to the jurisdiction, asserting the trial court lacked jurisdiction because Homeowners had no right to occupy their property without certificates of occupancy and the City did not take the property for public use.[4]   The trial court granted the City's plea.[5]

## DISCUSSION

In two issues, Homeowners argue the trial court erred in granting the City's plea to the jurisdiction because Homeowners have the right to occupy their homes and ordering Homeowners to vacate their homes because of a purported dangerous condition was invoking a public use.

Generally, a governmental entity such as the City of Houston is immune from tort liability.  *City of Galveston v. State*, 217 S.W.3d 466, 468 (Tex. 2007). Governmental immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction.  *See Univ. of Tex. M.D. Anderson Cancer Ctr. v. Baker*, 14-11-01037-CV, 2012 WL 6014608, at \*2 (Tex. App.—Houston [14th Dist.] Dec. 4, 2012, no. pet. h.).  A plea challenging the trial

---

[4] Two hearings were held on the City's plea to the jurisdiction, but the reporter's records from those hearings are not part of the record on appeal.

[5] The trial court found that "[Homeowners] have no property right" and "[t]here was no public use."  The City has not raised any other challenges to jurisdiction.

6

court's jurisdiction raises a question of law that is reviewed de novo.[6] *Johnson v. City of Bellaire*, 352 S.W.3d 260, 263 (Tex. App.—Houston [14th Dist.] 2011, pet. filed). We first look to the pleadings to determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We construe the pleadings liberally in favor of the plaintiffs, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *Id.* The allegations found in the pleadings may affirmatively demonstrate or negate the court's jurisdiction. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009).

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties. *Miranda*, 133 S.W.3d at 227. The standard of review for a jurisdictional plea based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228. Under this standard, we credit evidence favoring the nonmovant and draw all reasonable inferences in the nonmovant's favor. *See id.* The defendant must assert the absence of subject-matter jurisdiction and present conclusive proof that the trial court lacks subject-matter jurisdiction. *Id.*; *City of Austin v. Rangel*, 184 S.W.3d 377, 382 (Tex. App.—Austin 2006, no pet.) (holding defendant must first establish as a matter of law absence of subject-matter jurisdiction); *Dallas Cnty. v. Wadley*, 168 S.W.3d 373, 377-79 (Tex. App.—Dallas 2005, pet. denied) (holding plaintiffs had no burden on defendant's plea to jurisdiction until defendant met its burden). If the defendant discharges this burden, the plaintiff must present evidence sufficient to raise a material issue of

_____

[6] In reviewing a plea to the jurisdiction, we do not consider the merits of the underlying claim; we consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *See Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554–55 (Tex. 2000); *Carlson I*, 309 S.W.3d at 582.

fact regarding jurisdiction, or the plea will be sustained. *Miranda*, 133 S.W.3d at 228; *City of Dallas v. Heard*, 252 S.W.3d 98, 102 (Tex. App.—Dallas 2008, pet. denied). However, as with a traditional motion for summary judgment, if the defendant fails to present conclusive proof of facts negating subject-matter jurisdiction, the burden does not shift to the plaintiff to establish the existence of an issue of material fact. *See Wadley*, 168 S.W.3d at 378-79.

The Texas Constitution provides a clear and unambiguous waiver of immunity from suit for inverse condemnation claims under article I, section 17 (Takings Clause).[7] Tex. Const. art. I, § 17(a); *City of Dallas v. Stewart*, 361 S.W.3d 562, 568 (Tex. 2012). Therefore, governmental immunity does not shield the City from an action for compensation under the Takings Clause. *See* Tex. Const. art. I, § 17; *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007). Generally, governmental entities compensate property owners before appropriating their property, either by paying a mutually agreed price or by paying the value as determined in a statutory condemnation proceeding. *Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex. 1992). If, however, these entities appropriate property

---

[7] Article I, section 17(a) of the Texas Constitution provides as follows:

No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person, and *only if the taking, damage, or destruction is for:*

> *(1) the ownership, use, and enjoyment of the property, notwithstanding an incidental use, by:*
>
>> *(A) the State, a political subdivision of the State, or the public at large; or*
>>
>> *(B) an entity granted the power of eminent domain under law; or*
>
> *(2) the elimination of urban blight on a particular parcel of property.*

Tex. Const. art. I, § 17(a) (emphasis added). The italicized language was added to this provision by a November 2009 amendment. *Compare* Tex. Const. art. I, § 17 (2007) (amended 2009) *with* Tex. Const. art. I, § 17. The new version of the Texas Constitution does not apply because the alleged inverse condemnation occurred before November 2009.

8

without paying adequate compensation, the property owner may recover the resulting damages through an inverse condemnation claim. *Stewart*, 361 S.W.3d at 567; *Westgate*, 843 S.W.2d at 452. To properly assert an inverse condemnation claim against a governmental entity, a party must plead that the governmental entity intentionally performed an act in the exercise of its lawful authority that resulted in the taking, damaging, or destruction of the party's property for public use. *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001); *Steele v. City of Houston*, 603 S.W.2d 786, 790-91 (Tex. 1980). Whether alleged facts are enough to constitute an inverse condemnation is a question of law. *Gen. Servs. Comm'n*, 39 S.W.3d at 598.

An inverse condemnation claim may be based on a physical or regulatory taking. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex. 1998); *City of Houston v. Maguire Oil Co.*, 342 S.W.3d 726, 735 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). Physical takings occur when the government authorizes an unwarranted physical occupation of an individual's property. *Mayhew*, 964 S.W.2d at 933; *Maguire Oil Co.*, 342 S.W.3d at 735. In contrast to a physical taking, a restriction on the permissible uses of property or a diminution in its value resulting from regulatory action within the government's police power may be a compensable taking depending on the circumstances. *Sheffield Dev. Co. v. City of Glenn Heights*, 140 S.W.3d 660, 669-70 (Tex. 2004); *Maguire Oil Co.*, 342 S.W.3d at 735. "[A]ll property is held subject to the valid exercise of the police power and thus not every regulation is a compensable taking, although some are." *Sheffield*, 140 S.W.3d at 670; *see also Maguire Oil Co.*, 342 S.W.3d at 735. A taking may be temporary or permanent. *See Tarrant Reg'l Water Dist. v. Gragg,* 151 S.W.3d 546, 558 (Tex. 2004); *City of Houston v. Texan Land & Cattle Co.*, 138 S.W.3d 382, 389-91 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

Homeowners alleged the City ordered them to vacate their homes without first affording them due process as required by Local Government Code section 214.001, and, as a result, Homeowners were "forced to vacate their homes" and "find other places to live." Homeowners further argue, "The loss of the use of a home is a regulatory 'taking' of property." Homeowners' claims rest on their contention that the City's enforcement of an inapplicable ordinance, discussed *infra*, to force Homeowners to vacate their homes unreasonably interfered with Homeowners' rights to use and enjoy their property.[8] *See Maguire Oil Co.*, 342 S.W.3d at 736. The City disputes that it "took" Homeowners' property because the City alleges Homeowners had no right to occupy their property in the first place and it was not taken for public use.

## I. Homeowners Had Vested Property Rights

In their first issue, Homeowners argue the trial court erred in granting the plea to the jurisdiction on the ground that they "have no property right" to occupy their homes. The City argues Homeowners never had this right because certificates of occupancy had not been obtained for buildings in the Park Memorial

---

[8] On the merits, this type of regulatory taking is analyzed under the factors set forth in the United States Supreme Court's opinion in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978). *See Sheffield*, 140 S.W.3d at 669, 671–73 (adopting the *Penn Central* analysis under the Fifth Amendment to the United States Constitution for use in cases under article I, section 17 of the Texas Constitution); *see also City of Houston v. Trail Enters.*, 377 S.W.3d 873, 878 (Tex. App.—Houston [14th Dist.] 2012, pet. filed). The determination of whether a taking has occurred typically involves an ad hoc, highly fact-specific analysis. *Sheffield*, 140 S.W.3d at 672; *Trail Enters.*, 377 S.W.3d at 878. Under *Penn Central*, determining whether regulation becomes too much like a physical taking, and necessitates compensation for an individual property owner, requires balancing the public's interest against the private landowner's interests. *Sheffield*, 140 S.W.3d at 671–72; *Trail Enters.*, 377 S.W.3d at 879. Three nonexclusive factors have been highlighted as important in striking this balance: (1) the character of the governmental action; (2) the extent to which the regulation has interfered with reasonable and distinct investment-backed expectations; and (3) the economic impact of the regulation on the claimant. *Sheffield*, 140 S.W.3d at 672; *Trail Enters.*, 377 S.W.3d at 879. Generally, no one single factor should be considered paramount. *Sheffield*, 140 S.W.3d at 672; *Trail Enters.*, 377 S.W.3d at 879.

complex, as required by City ordinance. Assuming without deciding that the buildings in the complex were required to have certificates of occupancy and had none, the City cites no authority permitting the automatic eviction of Homeowners without due process for failure to obtain or display certificates of occupancy.[9] *See* Tex. Local Gov't Code § 214.001(a)(1) (allowing municipality to, "by ordinance, require the vacation [or] relocation of occupants . . . of a building that is . . . dilapidated, substandard, or unfit for human habitation and a hazard to the public health, safety, and welfare" subject to judicial review and due process requirements); *see also Carlson II*, 393 S.W.3d at 359 (holding City was required to follow procedure outlined by section 214.001); *Carlson I*, 309 S.W.3d at 588-89 (holding eviction under section 214.001 is subject to judicial review). The City's own Order to Vacate warned only that "failure to comply . . . may subject [Homeowners] to a municipal court citation."[10] Homeowners pleaded they are "owners" of the condominium units and the City ordered the units vacated without following the procedure required under Local Government Code section 214.001.[11] The City has not conclusively proved the divestment of Homeowners' property rights. We sustain Homeowners' first issue.[12]

---

[9] The City argues merely "state law prohibits the use or occupancy of commercial buildings that lack certificates of occupancy."

[10] To the extent that the City argues that the Homeowners have no right to illegally occupy a dangerous property, that claim would be dependent on the validity of the Order to Vacate which was reversed by the district judge and affirmed in *Carlson II*. Our opinion in *Carlson II* issued after the submission date for the instant case. 393 S.W.3d at 350.

[11] The dissent would hold Homeowners affirmatively negated jurisdiction by pleading an alleged taking based upon invalid government action in the form of the failure to provide Homeowners with procedural due process. We do not hold condemning the property in the interest of public safety is an act outside the exercise of the City's lawful authority. Homeowners allege the City, as part of its authority to condemn unsafe public property, took their property without compensating them, which is a valid inverse condemnation claim.

[12] Homeowners could not maintain a claim that they had suffered a regulatory taking simply because they were not allowed to take certain actions, such as moving back into their

11

## II. "For Public Use" in Matters of Public Health and Safety

In their second issue, Homeowners argue the trial court erred in granting the plea to the jurisdiction on the ground that "[t]here was no public use." The City argues ordering Homeowners to vacate their property "was a remedial action authorized by state law" and not "a public use."[13]

What constitutes a public use is a question of law. *Berry v. City of Reno*, 107 S.W.3d 128, 133 (Tex. App.—Fort Worth 2003, no pet). Under the Takings Clause, public use "includes matters of public health and safety such as unsafe buildings constituting nuisances." *City of Houston v. Crabb*, 905 S.W.2d 669, 674 (Tex. App.—Houston [14th Dist.] 1995, no writ). More specifically, when the City takes action "because of real or supposed public emergency," the action is "for the public use." *Id.*; *see also Patel v. City Of Everman*, 179 S.W.3d 1, 8 (Tex. App.—Tyler 2004, pet. denied) (holding city demolished buildings "for public use" based on city's finding that "life, health, property, or safety of the public [were] endangered"). The City argues that "public use is not synonymous with public safety" because a taking for public use occurs "only when there results to the public some definite right or use in the business or undertaking to which the property is devoted." *See Berry*, 107 S.W.3d at 133 (citing *Borden v. Trespalacios*

---

homes, without a permit. *See Garrett Operators, Inc. v. City of Houston,* 360 S.W.3d 36, 43 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 337 (2002) (excluding "normal delays associated with processing permits" from takings claims).

[13] The City cites *Basse Truck Line, Inc. v. Tex. Natural Res. Conservation Comm'n.* No. 03-02-00272-CV, 2003 WL 21554293, at *7 (Tex. App.—Austin July 11, 2003, no pet.) (mem. op.) (holding an order by the Texas Natural Resources Conservation Commission for plaintiff to cure a nuisance on property was not a regulatory or physical taking for public use, but a remedial action to cure a violation of state law). In that case, the plaintiff was required to pave its property to remediate the emission of dust that the Texas Natural Resource Conservation Commission deemed a nuisance. *Id*. at *1. This requirement was not a taking because it did not destroy the economically productive or beneficial use of the property. *Id*. at *7. Here, Homeowners allege they were deprived of all use of their property.

*Rice & Irrigation Co.*, 86 S.W. 11, 14 (Tex. 1905)); *see also Malcomson Rd. Util. Dist. v. Newsom*, 171 S.W.3d 257, 267 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). While this is not an incorrect statement, the Texas Supreme Court construes the phrase "public use" liberally. *Newsom*, 171 S.W.3d at 267 (citing *Coastal States Gas Producing Co. v. Pate*, 309 S.W.2d 828, 833 (Tex. 1958)). Public use means something more than "public welfare or good . . . under which almost any kind of business which promotes the prosperity or comfort of the community might be added by the power of eminent domain." *Pate*, 309 S.W.2d at 833. However, "[n]o hard and fast rule can be laid down for determining public use, . . . and each case is usually decided upon the basis of its own facts and the surrounding circumstances." *Id.* This explication of public use does not conflict with our holding in *Crabb* that "public use includes matters of public health and public safety" such as buildings constituting nuisances. *See Crabb*, 905 S.W.2d at 674 (citing *State v. Spartan's Indus., Inc.*, 447 S.W.2d 407, 413 (Tex. 1969)). The Homeowners pleaded, "The taking is for public use because [the City] ordered the homes vacated because of a real or supposed public emergency in a matter of public health and safety," and the City has not conclusively disproved this allegation. We sustain Homeowners' second issue.

We reverse the trial court's order granting the City's plea to the jurisdiction and remand for proceedings consistent with this opinion.


                                    /s/          Martha Hill Jamison
                                                 Justice


Panel consists of Justices Frost, Christopher, and Jamison (Jamison, J., majority, Frost, J., dissenting).

13